FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Apr 22, 2022

OFFICE OF THE CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

ANNIE THORNTON, individually and on behalf of all others similarly situated,

v.

TYSON FOODS, INC.

Case No. 5:22-cv-5077-TLB

FLSA Collective Action

## PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Like many other companies across the United States, Tyson's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Tyson's organization.

3. As a result, Tyson's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4. Annie Thornton is one such worker for Tyson.

5. Tyson could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. But it didn't. Instead, Tyson used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. Tyson pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. Tyson made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. Tyson's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Thornton brings this lawsuit to recover these unpaid overtime wages and other damages owed by Tyson to them and Tyson's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Tyson's decision to make its own non-exempt employees workers bear the economic burden for the hack.

11. This action seeks to recover the unpaid wages and other damages owed by Tyson to all these workers, along with the penalties, interest, and other remedies provided by federal law.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Tyson is headquartered in this District.

## PARTIES

14. **Plaintiff Annie Thornton** is a natural person.

15. Thornton was, at all relevant times, an employee of Tyson.

16. Thornton has worked for Tyson since May 2010.

17. Thornton represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Tyson (including its subsidiaries and alter egos) who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

18. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

19. **Defendant Tyson Foods, Inc. ("Tyson")** is a foreign corporation.

20. Tyson's headquarters and principal place of business is in this District.

21. Tyson may be served by service upon its registered agent, **CT Corporation System, 124 West Capitol Ave., Ste. 1900, Little Rock, AR 72201**, or by any other method allowed by law.

22. At all relevant times, Tyson exerted operational control over its subsidiaries and alter egos.

23. At all relevant times, Tyson substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

24. At all relevant times, Tyson had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

25. Tyson's subsidiaries and alter egos include, but are not limited to:

- Tyson Fresh Meats, Inc.
- Tyson Poultry, Inc.
- Tyson Prepared Foods, Inc.

26. Tyson employed and/or jointly employed, with its subsidiaries and alter egos, Tyson and the Similarly Situated Workers.

27. Tyson and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

28. Throughout this Complaint, Tyson and its subsidiaries and alter egos are referred to jointly as "Tyson."

### COVERAGE UNDER THE FLSA

29. At all relevant times, Tyson was an employer of Thornton within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30. At all relevant times, Tyson was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

31. At all relevant times, Tyson was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

32. During at least the last three years, Tyson has had gross annual sales in excess of $500,000.

33. At all relevant times, Tyson was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

34. Tyson employ many workers, including Thornton, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

35. The goods and materials handled, sold, or otherwise worked on by Thornton and other employees of Tyson and that have been moved in interstate commerce include, but are not limited to, food products.

### FACTS

36. Tyson produces and distributes various food products.

37. Many of Tyson's employees are non-exempt hourly and salaried workers.

38. Since at least 2021, Tyson has used timekeeping software and hardware operated and maintained by Kronos.

39. On or about December 11, 2021, Kronos was hacked with ransomware.

40. The Kronos hack interfered with the ability of its customers, including Tyson, to use Kronos's software and hardware to track hours and pay employees.

41. Since the onset of the Kronos hack, Tyson has failed to keep accurate track of the hours that Thornton and Similarly Situated Workers have worked.

42. Instead, Tyson has used various methods to estimate the number of hours Thornton and Similarly Situated Workers work in each pay period.

43. For example, Tyson issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

44. As a result of Tyson's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

45. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

46. Thornton is one of many of Tyson's employees affected by these pay and timekeeping practices.

47. Instead of paying Thornton for the hours she actually worked (including overtime hours), Tyson simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Thornton's actual hours worked and regular pay rates, in multiple workweeks.

48. In some instances, Thornton was paid portions of the overtime she worked, but the overtime rate she was paid was not at least 1.5 times the agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

49. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

50. Tyson knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

51. Tyson knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

52. Tyson could has instituted any number of methods to accurately track and timely pay its employees for all hours worked.

53. Instead of accurately tracking hours and paying employees its overtime, Tyson decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

54. Even to the extent it did pay some overtime to affected employees, Tyson failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium Tyson did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

55. It was feasible for Tyson to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

56. But Tyson chose not to do that.

57. In other words, Tyson pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

58. Thornton is just one of the many employees of Tyson who had to shoulder the burden of this decision by Tyson.

59. Thornton was a non-exempt hourly employee of Tyson.

60. Thornton regularly worked over 40 hours per week for Tyson.

61. Thornton's normal, pre-Kronos hack hours are reflected in Tyson's records.

62. Since the Kronos hack, Tyson has not paid Thornton for her actual hours worked each week.

63. Since the hack took place, Tyson has not been accurately recording the hours worked by Thornton and its other workers.

64. Even when Tyson has issued payment to Thornton for any overtime, the overtime is not calculated based on Thornton's regular rates, as required by federal law.

65. Tyson was aware of the overtime requirements of the FLSA.

66. Tyson nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Thornton.

67. Tyson's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

68. The full overtime wages owed to Thornton and the Similarly Situated Workers became "unpaid" when the work for Tyson was done—that is, on Thornton and the Similarly

Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

69. At the time Tyson failed to pay Thornton and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Tyson became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

70. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

71. Even if Tyson made any untimely payment of unpaid wages due and owing to Thornton or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

72. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

73. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Tyson's acts and omissions resulting in the unpaid wages in the first place.

74. Thornton and the Similarly Situated Workers remain uncompensated for the wages and other damages owed by Tyson under federal law.

## COLLECTIVE ACTION ALLEGATIONS

75. Thornton incorporates all other allegations.

76. Numerous individuals were victimized by Tyson's patterns, practices, and policies, which are in willful violation of the FLSA.

77. Based on her experiences and tenure with Tyson, Thornton is aware that Tyson's illegal practices were imposed on the FLSA Collective.

78. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

79. These employees are victims of Tyson's unlawful compensation practices and are similarly situated to Thornton in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

80. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

81. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

82. Tyson's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

83. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA

84. Thornton incorporates each other allegation.

85. By failing to pay Thornton and the FLSA Collective members overtime at 1.5 times their regular rates, Tyson violated the FLSA. 29 U.S.C. § 207(a).

86. Tyson owes Thornton and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

87. Tyson owes Thornton and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

88. Likewise, Tyson owes Thornton and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which she worked over 40 hours in the week, but were not paid in full for all hours.

89. Tyson knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

90. Because Tyson knew, or showed reckless disregard for whether, their pay practices violated the FLSA, Tyson owes these wages for at least the past three years.

91. Tyson's failure to pay overtime compensation to Thornton and the FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

92. Because Tyson's decision not to pay overtime was not made in good faith, Tyson also owes Thornton and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

93. Accordingly, Thornton and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### RELIEF SOUGHT

Thornton prays for judgment against Tyson as follows:

    a. For an order certifying a collective action for the FLSA claims;

b. For an order finding Tyson liable for violations of federal wage laws with respect to Thornton and all FLSA Collective members covered by this case;

c. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Thornton and all FLSA Collective members covered by this case;

d. For an equitable accounting and restitution of wages due to Thornton and all FLSA Collective members members covered by this case;

e. For a judgment awarding attorneys' fees to Thornton and all FLSA Collective members covered by this case;

f. For a judgment awarding costs of this action to Thornton and all FLSA Collective members covered by this case;

g. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Thornton and all FLSA Collective members covered by this case; and

h. For all such other and further relief as may be necessary and appropriate.

Dated: Apr. 21, 2022

Respectfully submitted,

By: /s/ Matthew S. Parmet

Matthew S. Parmet
TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**