UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| ANNIE THORNTON, individually and on behalf of all others similarly situated,<br><br>v.<br><br>TYSON FOODS, INC. | Case No. 5:22-cv-05077-TLB<br>FLSA Collective Action<br><br>Judge Timothy L. Brooks |

**THORNTON'S REPLY IN SUPPORT OF CONDITIONAL CERTIFICATION**

Respectfully submitted,

**PARMET PC**
 Matthew S. Parmet
 TX Bar # 24069719
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone  713 999 5228
matt@parmet.law

**MORGAN & MORGAN, P.A.**
 Andrew R. Frisch
 FL Bar # 027777
 (*admitted pro hac vice*)
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-3013
AFrisch@forthepeople.com

**Attorneys for Plaintiffs**

A.  SUMMARY

Once its payroll outage began in December 2021, Tyson made several decisions regarding how and when it would pay its non-exempt employees that it applied uniformly, regardless of any individualized factors. These company-wide pay policies—in particular, Tyson's decisions to estimate hours worked by duplicating prior pay periods and to combine workweeks to reconcile employees' net pay at the end of the outage—violate the FLSA and bind the proposed collective as similarly situated. Because Thornton has shown a common pay practice and policy that Tyson acknowledges it applied across the board, notice is due to issue to the proposed collective.

B.  ARGUMENT & AUTHORITIES

1.  **Thornton alleges a common pay practice which violates the FLSA on its face.**

Thornton alleges Tyson's uniform pay scheme in reaction to its payroll outage violated the FLSA by: (1) paying based on estimated hours rather than actual hours worked; and (2) reconciling wages based on combining impacted workweeks across the entire outage, rather engaging in the week-by-week analysis required by the FLSA. ECF No. 2. Tyson's response, through corporate representative Rusty Courson, admits these pay practices were applied uniformly to the entire putative collective:

- Tyson used estimated payrolls by "assum[ing] the employees worked the same number of hours as they did on the preceding week" and "replicated" prior pay periods or using a 40-hour week, rather than pay employees based on their actual time worked during the initial pay period. Courson decl., ECF No. 27-1, at ¶ 9.

- Tyson knew that duplicating pay periods would result in some employees being underpaid and that reconciliation would be necessary. *Id.* at ¶ 11.

- Tyson's reconciliation process for underpaid employees took "almost **six months**," with many employees not receiving overdue compensation until June 2022. *Id.* at ¶¶ 12, 14.

- Tyson aggregated employee pay data across the entire payroll outage, instead of determining amounts owed to employees on a week-by-week basis. *Id.* at ¶ 13.

In sum, Thornton has easily exceeded her low burden to demonstrate that Tyson

maintained multiple, common illegal policies and practices related to the Kronos outage that violated the FLSA in the same manner as to both her and the proposed collective.

1.1.     Thornton's allegations are common to the proposed collective.

Tyson's sworn testimony made clear that the pay practices were uniformly applied to "17,000 [employees] who[ ] worked for Tyson **and its subsidiaries**." Courson decl., ECF No. 27-1, at *2, ¶ 7 (emphasis added). So Tyson's request to limit the collective to the Eufaula facility ignores the evidence on record—including its own testimony. Already, there are Opt-in Plaintiffs that didn't work in Eufaula or for Keystone—at facilities and subsidiaries that Tyson itself concedes were subject to the same pay practices:

| Name | City, State | Subsidiary |
| --- | --- | --- |
| Annie Thornton | Eufaula, AL | Keystone Foods, LLC |
| Willie Jackson | Eufaula, AL | Keystone Foods, LLC |
| Shanta Love | Eufaula, AL | Keystone Foods, LLC |
| Amanda Moore | Rome, GA | The Hillshire Brands Company |
| Danny Supeck | Moss, TN | Cobb-Heritage, LLC |
| Jeanous West | Eufaula, AL | Keystone Foods, LLC |

Simply put, there are no grounds to arbitrarily limit the proposed collective to a single facility, given the evidence, including Tyson's own testimony that it implemented singular policies and pay practices that impacted all 17,000 employees in the same manner—regardless of their geographic location or subsidiary. Having engaged in this singular pay practice in response to the outage, Tyson cannot escape the common pay practice today.

Likewise, Tyson urges the Court to reach improper merits-based conclusions by excluding individuals who were "net" overpaid., a determination it apparently made unilaterally by improperly combining all workweeks impacted by the outage, rather than conducting a week-by-week analysis required under the FLSA. But that outcome-based analysis fails to track the allegations that Thornton has made regarding the FLSA violation at issue—that all Tyson's employees were paid "according to the same policy and procedure," which is the appropriate

standard for conditional certification. *Harrison v. Hog Taxi, LLC*, 2019 WL 4280328, at *4 (W.D. Ark. Sept. 10, 2019) (Brooks, J.). Tyson's claim as to the merits of these employees' claims must wait until decertification or summary judgment. *Id.* As another court certifying a Kronos outage on the same grounds explained, the "theory that [the employer] violated the FLSA by aggregating data across multiple pay periods therefore may be an issue on which she and other employees are 'similarly situated' regardless of whether … data was used [to estimate] hours worked or rate of pay." *Gaul*, 2023 WL 312369, at *8. Tyson's request that the Court exonerate this pay practice at the conditional certification stage should be rejected.

### 1.2. Individualized damages do not preclude conditional certification.

Tyson's argument that individualized damages preclude certification also misses the mark. As this Court and countless others have previously—and correctly—held, where a company-wide policy is at issue that is alleged to violate the FLSA, individual damages do not prevent certification. *E.g.*, *Harris v. Express Courier Int'l, Inc.*, 2016 WL 5030371, at *4 (W.D. Ark. Sept. 19, 2016) (Brooks, J.) ("[T]he calculation of damages should not be considered in the same context as the Court's decision on whether to exercise its discretionary authority to issue notice to a proposed class."); *Charbonneau v. Mortg. Lenders of Am. L.L.C.*, 2021 WL 84171 (D. Kan. Jan. 11, 2021) (refusing to decertify collective because collective members had individualized damages). The question of "individual damage amounts" is virtually omnipresent in FLSA cases and "cannot defeat collective treatment." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1116 (9th Cir. 2018).

### 1.3. Any of Tyson's alleged merit-based defenses are not properly before the Court.

Even if any of Tyson's alleged defenses held water (and they don't), they are all merits-based arguments and thus improperly raised at this juncture. At this stage, it is inappropriate to evaluate the merits of FLSA claims or defenses. Courts in the Eighth Circuit have consistently

held that merits-based inquiries, including whether an FLSA exemption applies, are reserved for the second stage of FLSA actions (decertification). *See, e.g., Simmons v. Valspar Corp.*, 2011 WL 1363988 (D. Minn. Apr. 11, 2011), *Loomis v. CUSA LLC*, 257 F.R.D. 674, 678 (D. Minn. 2009), *McCauley v. First Option Mortgage, LLC*, 2010 WL 3522316 (E.D. Mo. Sept. 2, 2010), *Pressler v. FTS USA, LLC*, 2010 WL 1904974 (E.D. Ark. May 12, 2010).

### 2. The Court should operate under Eighth Circuit authority.

Tyson's request that the Court depart from longstanding Eighth Circuit authority and abolish the two-step *Lusardi* conditional certification procedure should be squarely rejected. Both *Swales v. KLLM Transport Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), and *Clark v. A&L Homecare & Training Ctr., LLC*, 2023 WL 3559657 (6th Cir. May 19, 2023), abrogated the two-step conditional certification procedure that has long been the standard in FLSA collective actions, including in the Eighth Circuit. Yet in the past several years, Eighth Circuit district courts have **uniformly** declined to shift from the two-stage *Lusardi* conditional certification procedure. *Babbitt v. Target Corp.*, 2023 WL 2540450, at *4 (D. Minn. Mar. 16, 2023) (collecting cases). Indeed, there has been "nearly universal negative treatment of *Swales* by other district courts in this Circuit." *Peck v. Mercy Health*, 2023 WL 1795421, at *3 (E.D. Mo. Feb. 7, 2023).[1] Many courts across the country have done the same. *Babbitt*, 2023 WL 2540450, at *4 (collecting cases). Like its sister courts, this Court

---

[1] *See also, e.g., Looney v. Weco, Inc.*, 2022 WL 4292384, at *2 (E.D. Ark. Sept. 16, 2022) ("The Court declines to apply *Swales*, as have other district courts in the Eighth Circuit."); *Learing v. Anthem Companies, Inc.*, 2022 WL 594378, at *4 (D. Minn. Feb. 28, 2022) (same); *Murphy v. Lab. Source, LLC*, 2022 WL 378142, at *11 n.4 (D. Minn. Feb. 8, 2022) (declining to apply *Swales* and reasoning that "*Swales* undermines the discretion afforded to district [c]ourt[s] in implementing section 216(b)"); *McCoy v. Elkhart Prods. Corp.*, 2021 WL 510626, at *2 (W.D. Ark. Feb. 11, 2021) (Holmes, J.) ("The Court will follow the historical, two-stage approach, which has proven to be an efficient means of resolution of this issue.").

should reject Tyson's invitation to create a new standard in this Circuit.[2]

### 3. Interest is not a factor in weighing FLSA conditional certification.

While not required, Thornton has already shown substantial interest, in that six others have already opted-into this case. ECF Nos. 5, 6. That these individuals have done so without formal notice "is persuasive evidence that a putative class does exist." *Shaffner v. Cash Register Sales & Serv. of Houston, Inc.*, 2006 WL 1007542, at *1 (S.D. Tex. Apr. 17, 2006).

"FLSA plaintiffs are not required to show that putative members of the collective action are interested in the lawsuit in order to obtain authorization for notice of the collective action to be sent to potential plaintiffs." *Amendola v. Bristol–Myers Squibb Co.*, 558 F.Supp.2d 459, 466 (S.D.N.Y. 2008). That's particularly true where, as here, "The alleged FLSA violations are technical and subtle, and thus many ... employees may not even realize there has been an arguable violation." *Gaul*, 2023 WL 312369, at *9 (discussing interest in certifying another Kronos outage FLSA case without opt-ins). In such a case, the aggrieved plaintiff's own declaration can confirm the existence of other, aggrieved individuals. *Id.*; *Harris*, 2016 WL 5030371, at *4 ("[I]f Plaintiffs were required at the notice stage to produce some evidence that others wished to join the class, Plaintiff James Harris's affidavit satisfies that burden." (internal citation omitted)). For these reasons, this "illogical" argument can be dismissed. *See Carbone v. Zen 333 Inc.*, 2016 WL 7383920, at *9 (D.S.C. Dec. 21, 2016) (quotation omitted).[3] In all, the Court should decidedly reject this "circular logic." *Stouder*, 2010 WL 11619552, at *3.

---

[2] Of course, under any of these three standards, certification would be warranted here, particularly given the evidence on record.

[3] *See also Heckler v. DK Funding, LLC*, 502 F.Supp.2d 777, 780 (N.D. Ill. 2007) (explaining the argument "does not make sense."); *Gibson v. NCRC, Inc.*, 2011 WL 2837506, at *7 (S.D. Tex. Jul. 18, 2011) (calling it a "chicken and egg problem"); *Stouder v. Turblex, Inc.*, 2010 WL 11619552, at *3 (W.D. Mo. Aug. 31, 2010) (complaining that it puts "the cart before the horse")

4.  **Compromise regarding collective definition and notice.**

To eliminate dispute, Thornton agrees to Tyson's proposals to clarify that the putative collective members worked overtime, as well as to specify the relevant dates. Thornton further agrees to compromise and limit notice to **US mail and email**, without a notice by text, which she originally proposed. A revised, proposed order reflecting these changes is attached. Tyson's other complaints—regarding email notice, a 60-day opt-in period, and reminder notice—have already been addressed by the Court in prior decisions, and the same logic and result should attend here.

4.1. **Email is a standard for notifying potential collective members.**

This Court, and others in this District, routinely order email notice. As this Court has explained, "Electronic communication is commonly utilized and is an appropriate, convenient, and efficient manner of communication with potential plaintiffs in FLSA actions." *Harrison v. Hog Taxi, LLC*, 2019 WL 4280328, at *6 (W.D. Ark. Sept. 10, 2019) (internal quotation omitted); *see also, e.g., Turner v. Concentrix Servs.*, Inc., 2020 WL 544705, at *8 (W.D. Ark. Feb. 3, 2020) (Hickey, J.) (same); *de Lopez v. Ozark Mountain Poultry, Inc.*, 2014 WL 12888806, at *4 n.4 (W.D. Ark. June 17, 2014) (Brooks, J.) (explaining email notice was "neither unnecessary nor burdensome").

4.2. **The "default," 60-day notice period should apply.**

Although Tyson wants a notice period no more than 45 days, "most courts appear to default to a notice period of 60 days." *McCloud v. McClinton Energy Gp., L.L.C.*, 2015 WL 737024, at *10 (W.D. Tex. Feb. 20, 2015). The 60-day "default" has been adopted by multiple times in this District. *Ferguson v. Ark. Support Network, Inc.*, 2018 WL 2136359, at *4 (W.D. Ark. May 9, 2018) (Holmes, J.); *Freeman v. Tyson Foods, Inc.*, 2022 WL 3566615 (W.D. Ark. Aug. 18, 2022) (Holmes, J.). Tyson has provided no explanation why that "default" should not apply in this case. Indeed, this court and others in this District have even embraced 90-day opt-in periods. *Harrison*, 2019 WL

4280328, at *5; *Turner*, 2020 WL 544705, at *9; *de Lopez*, 2014 WL 12888806, at *6. In truth, Tyson "prefers a shorter notice period simply because it hopes that fewer plaintiffs will opt in as a result." *Arceo v. Orta*, 296 F.Supp.3d 818, 826 (N.D. Tex. 2017) (approving 90-day opt-in period). But that's not the goal of the notice process. *Ferguson*, 2018 WL 2136359, at *4 ("[A] 60-day opt-in period is sufficient and will … serve the interests of efficiently facilitating notice without further delaying this litigation."). And a 60-day "time period [is] neither unduly burdensome nor prejudicial to Defendant[ ]." *de Lopez*, 2014 WL 12888806, at *4 n.3 (approving 90 days). The Court should approve a 60-day notice to accommodate a reasonable time for potential collective members.

**4.3.    Reminder notice helps ensure delivery and that notice isn't overlooked.**

A reminder notice is another standard aspect of the FLSA notice procedure in this District, already adopted by this Court. *Harrison*, 2019 WL 4280328, at *5; *de Lopez*, 2014 WL 12888806, at *6; *Harris*, 2016 WL 5030371, at *5. Because the FLSA requires a plaintiff to affirmatively opt-into a case to stop the running of their statute of limitations, a reminder notice is critically important. *O'Neal*, 2016 WL 3087296, at *7 (collecting cases); *see also, e.g., Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) ("Particularly since the FLSA requires an opt-in procedure, the sending of a [reminder] postcard is appropriate."). If a second notice is not sent, a collective member who—for whatever reason—does not receive or overlooks an initial notice may be forever barred from asserting their rights by the running of the statute of limitations. 29 U.S.C. §§ 255, 256. In contrast, the "worst" harm resulting from a second mailing is that a potential collective member who does not wish to join the lawsuit will receive an additional copy of the notice.

Since Thornton's proposed reminder is identical in content to the first notice, the Court should permit a follow-up mailing. *See Jennings v. Cellco P'ship*, 2012 WL 2568146, at *6 (D. Minn. July 2, 2012); *Holliday v. J S Exp. Inc.*, 2013 WL 2395333, at *9 (E.D. Mo. May 30, 2013).

Respectfully submitted,

By: */s/ Matthew S. Parmet*
_____
**Matthew S. Parmet**
TX Bar # 24069719
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone  713 999 5228
matt@parmet.law

**Andrew R. Frisch**
FL Bar # 027777
(*admitted pro hac vice*)
**MORGAN & MORGAN, P.A.**
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-3013
AFrisch@forthepeople.com

**Attorneys for Plaintiffs**