IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**ANNIE THORNTON,** **PLAINTIFF**
**Individually and on Behalf of All**
**Others Similarly Situated**

**V.**                      **CASE NO. 5:22-CV-05077**

**TYSON FOODS, INC.**                      **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Annie Thornton, an employee of Defendant Tyson Foods, Inc., brings this Federal Labor Standards Act ("FLSA") action both individually and on behalf of a nationwide collective of employees she alleges was subjected to the same unlawful wage policies by Tyson. Before the Court are Thornton's Motion for Conditional Certification and Brief in Support (Docs. 23 & 24), Tyson's Response in Opposition (Doc. 27), and Thornton's Reply (Doc. 30). For the reasons stated below, the Motion is **GRANTED**.

### I. BACKGROUND

Thornton moves for conditional certification of a collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA is a federal statute governing minimum wages, maximum hours worked, and overtime compensation. The statute allows an action to be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This type of lawsuit requires that each potential plaintiff "opt in," or "give his consent in writing to become such a party" to a collective claim for unpaid wages. *Id.*

1

According to the Complaint (Doc. 2) and Thornton's Declaration (Doc. 24-1), Thornton has been employed at Tyson[1] since May 2010. Tyson uses the Kronos timekeeping and payroll system supplied by Ultimate Kronos Group. In December 2021, a malicious actor hacked Kronos's system, took control of Kronos's data, and demanded Kronos pay a ransom to regain access to its servers. As a result, Tyson could not access the timekeeping records for the December 5 to December 11 pay period. In order to issue paychecks for that pay period, Tyson duplicated the timekeeping records from the pay period that ended on December 4. So, the workers received the same December 4 paycheck again, whether or not their actual hours during the December 11 pay period were more or less than those worked during the December 4 pay period. After the December 11 pay period, Tyson reverted to manual timekeeping, which Thornton alleges failed to fully account for all hours worked by non-exempt employees. On January 15, 2022, Kronos regained access to its system and Tyson resumed use of the Kronos timekeeping and payroll system. Tyson took steps to repay any missing wages over the months following the Kronos hack, and according to Tyson's calculations, Thornton was repaid all her missing wages on May 19, 2022. Thornton declares "that most or all other nonexempt employees for Tyson's who had to use the Kronos system had the same problems [as Thornton] being fully and timely paid for the work we did." (Doc. 24-1, ¶ 19).

Based on these allegations, Thornton's Motion initially sought conditional certification of the following FLSA collective:

---

[1] The parties agree that the facilities subject to the proposed collective are those operated by the following Tyson subsidiaries: Advance Food Company LLC, AdvancePierre Foods, Inc., Allied Specialty Foods, Inc., Barber Foods, LLC, Cloverdale Farms, LLC, CobbHeritage, LLC, Keystone Foods, LLC, Original Philly Holdings, Inc., and The Hillshire Brands Company.

> All current or former non-exempt employees of Tyson Foods, Inc. ("Tyson") (including its subsidiaries and alter egos) who worked in the United States at any time during Tyson's Kronos service outage, beginning on or about December 11, 2021, until the time that Tyson regained full access to all Kronos products and services, and resumed normal employee timekeeping and payroll operations.

(Doc. 23-1).

Tyson submits a declaration (Doc. 27-1) from Rusty Courson, Senior Director for Corporate Accounting at Tyson. Courson declares that approximately 17,000 non-exempt Tyson workers across 27 facilities in 19 states use the Kronos system. Courson confirms that the Kronos hack caused an outage that lasted from December 11, 2021, to January 15, 2022. He further declares that, in response to the Kronos outage, Tyson replicated the December 4 pay period wages for the December 11 pay period, instituted manual timekeeping at its facilities, used local time clocks where available, and "voluntarily undertook a detailed reconciliation audit for almost six months and scrutinized the manual time records, local time clock reports, and payroll records of the affected employees to ensure they were accurately and completely compensated." *Id.* at ¶¶ 9–11. According to Courson, 6,700 employees, including Thornton, were undercompensated during the outage and were given full reconciliation payments by no later than June 23, 2022.

Thornton argues conditional certification is proper because "Tyson's non-exempt employees were subject to the same time, pay, and accounting practices as a result of Tyson's uniform response to the Kronos outage." (Doc. 24, p. 4). Thornton argues that Tyson responded to the outage in all its facilities by duplicating the December 4 pay period and then instituting manual timekeeping. In addition, Thornton argues that Tyson's uniform reconciliation process to repay employees was unlawful because the proces "'netted' employees['] pay across weeks and pay periods, such that it only determined

3

whether the employee was overall over- or underpaid as a result of the outage, rather than treating each pay period on its own." *Id.* at 3.

Tyson opposes conditional certification on several grounds. First, it argues the Court should deny certification under the more rigorous certification process recently embraced by the Fifth and Sixth Circuits. Second, Tyson argues that—even under the more lenient two-step certification approach—the Court should deny certification because Thornton cannot show that she is similarly situated to Tyson's other non-exempt employees, particularly those who work in different facilities than Thornton. If the Court does certify a collective, Tyson asks that it be limited to the facility in Eufaula, Alabama, where Thornton works. Finally, Tyson objects to Thornton's proposed collective definition and Thornton's proposed methods of notice.

In her reply brief, Thornton offers a compromise collective definition, in response to Tyson's objections, which narrows the putative collective to only those who worked at least 40 hours within the relevant date range:

> All current or former non-exempt employees of Tyson Foods, Inc. ("Tyson") (including its subsidiaries and alter egos) who worked in the United States for at least 40 hours in any one workweek during any pay period affected by Tyson's Kronos service outage, beginning on or about December 11, 2021, until January 15, 2022.

(Doc. 30-1, p. 1).

## II. LEGAL STANDARD

FLSA authorizes collective actions under Section 216(b), but the statute is silent as to what standards and procedures courts should use to determine whether a putative collective is "similarly situated" and thus allow notice to be sent to the potential members. Nor has the Eighth Circuit announced standards that district courts must use in evaluating FLSA collective actions. In the absence of such guidance, numerous district courts in this

4

Circuit, including this Court, have approved of the two-step certification process laid out in the Fifth Circuit case *Mooney v. Aramco Services Co.*, 4 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). *See Godwin v. K-Mac Enters., Inc.*, 2020 WL 1044016, at *1 (W.D. Ark. Mar. 4, 2020) (citing *Mooney* for the prevailing approach used by district courts in the Eighth Circuit for certifying collective actions); *Garrison v. ConAgra Packaged Foods, LLC*, 2013 WL 1247649, at *1 (E.D. Ark. Mar. 27, 2013) (same); *Shackleford v. Cargill Meat Sols. Corp.*, 2013 WL 209052, at *1 (W.D. Mo. Jan. 17, 2013) (same).

First articulated in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), the two-step process involves a progressively more rigorous analysis of whether a putative collective of plaintiffs is similarly situated and thus suited for the collective action model as a means of efficiently litigating their claims. *Mooney* described the process as follows:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the Court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

54 F.3d at 1213–14.

Within this two-step process, district courts in this Circuit have considered a variety of factors—no single one of which is dispositive—in determining whether the plaintiff and proposed collective members are similarly situated. These factors include: (1) whether they hold the same job title; (2) whether they work or worked in the same geographic location; (3) whether they were subjected to the same policies and practices, established in the same manner by the same decision-maker; (4) whether the alleged violations occurred during the same time period; and (5) the extent to which the acts constituting the alleged violations are similar. *Watson v. Surf-Frac Wellhead Equip. Co., Inc.*, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097–99 (11th Cir. 1996)). While the burden of proof borne by the plaintiffs at the notice stage remains relatively low, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Jost v. Commonwealth Land Title Ins. Co.*, 2009 WL 211943, at *2 (E.D. Mo. Jan. 27, 2009) (quoting *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)).

Tyson asks the Court to reconsider its approach to certification in light of the Fifth and Sixth Circuits' rejections of the two-step process in *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021), and *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023).

In *Swales*, the Fifth Circuit determined:

> Instead of adherence to *Lusardi*, or any test for "conditional certification," a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of "employees" is "similarly situated." And then it should authorize preliminary discovery accordingly. The amount of discovery necessary to make that

6

>determination will vary case by case, but the initial determination must be made, and as early as possible.

*Id*. at 441. The Fifth Circuit rejected *Lusardi*'s more lenient standard, but it did not replace that process with a new hard-and-fast rule. Rather, the Fifth Circuit released district courts from the strictures of *Lusardi*'s two-part framework, concluding that "[t]he bottom line is that the district court has broad, litigation-management discretion here." *Id*. at 443.

In *Clark*, the Sixth Circuit similarly rejected Lusardi's two-step framework but, unlike the Fifth Circuit, adopted a new rule for district courts to apply. Borrowing from the standard for granting a preliminary injunction, the court held that "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023). Despite these two decisions, at least five circuits endorse or sanction district courts' use of the two-step framework. *See Misty Farmer v. Boone County Independent Living, Inc.*, No. 3:21-CV-3027 (W.D. Ark. Nov. 1, 2021), Doc. 23, p. 7 n.3 (collecting cases).

In *Farmer*, this Court was similarly asked to reject the two-step framework in favor of the Fifth Circuit's approach in *Swales*. There, the Court explained:

>The Court need not abandon the familiar two-step certification process—which is widely accepted and has proven to be a helpful litigation management framework—to account for deficient allegations in particular cases. . . . This Court will not reflexively grant conditional certification on the barest of allegations, particularly where individualized merits issues appear from the outset to dominate the analysis. However, as explained below, the instant case is not one that demands heightened scrutiny, and the Court sees no cause to stray from the two-step certification process.

*Id.* at Doc. 23, pp. 7–8.[2] The Court maintains that position and will apply the two-step framework here.

### III. DISCUSSION

### A. Conditional Certification

Having reviewed Thornton's Motion in light of the relevant standard and applicable factors, the Court finds that she has met her burden of demonstrating that she is similarly situated to a collective of non-exempt workers who worked for Tyson during the Kronos outage. Because all non-exempt employees at Tyson were similarly affected by the Kronos hack, judicial efficiency would be promoted by litigating their claims together on a nationwide-basis. *See Zivali v. AT & T Mobility LLC*, 646 F. Supp. 2d 658, 663 (S.D.N.Y. 2009) (conditionally certifying nationwide collective of retail employees who were subjected to the same uniform timekeeping system that failed to account for all hours worked).

At least one FLSA collective involving the Kronos hack has already been conditionally certified. *See Gaul v. Accura Health Ventures, LLC*, 2023 WL 312369 (S.D. Iowa Jan. 18, 2023). In *Gaul*, the district court certified a collective of all non-exempt healthcare workers at 21 facilities in Iowa who were all subjected to the employer's pay policies implemented as a result of the Kronos hack. *Id.* at *9. Rather than duplicate the pay period immediately preceding the hack, as Tyson did, the employer in *Gaul* instituted manual timekeeping for the first pay period following the hack. *See id.* at *2. Similar to Tyson, the employer then reconciled mistakes in the employees' pay after the Kronos

---

[2] The Court's opinion in *Farmer* does not appear to be available in the Westlaw or Lexis databases, and the parties are excused for not recognizing that the Court has previously weighed in on this question.

8

hack ended, including issuing overpayments to correct past underpayments. *See id.* The district court found that the named-plaintiff was not similarly situated to her coworkers in certain respects because she received a promotion just before the Kronos hack, and the employer used her pre-hack pay rates to manually calculate her wages. *Id.* at *8. Nevertheless, the court found the proposed collective similarly situated with respect to the plaintiff's allegation that—just as Thornton alleges here—the employer "violated the FLSA by aggregating data across multiple pay periods;" in other words, using "an overpayment or withholding error in a subsequent pay period . . . to offset an FLSA violation from an earlier period." *Id.*

Here, the proposed collective is even more similarly situated than the collective certified in *Gaul*. Thornton's claims do not involve any particularized pay-rate errors. While the putative collective members do not necessarily share the same job titles or perform the same duties, this is a case where those types of similarities are of less importance. It is undisputed that Tyson's policy to duplicate the December 4 pay period for the December 11 pay period was a uniform, company-wide policy, as were the company's policies to manually track hours during the remainder of the hack and reconcile pay on a "net" basis, rather than pay period by pay period. Tyson's non-exempt employees were affected by these policies in similar ways, particularly now that Thornton has limited her proposed collective to only those non-exempt employees who worked at least 40 hours during the hack.[3]

---

[3] While Thornton writes in her Reply that she agrees to limit the collective to employees who "worked overtime," (Doc. 30, p. 7), her revised proposed collective includes workers who worked "at least 40 hours in any one workweek," (Doc. 30-1, p. 1), rather than "more than 40 hours." Even so, the Court agrees the collective should not be limited at the notice

9

Moreover, Thornton has demonstrated at least a "colorable basis" that Tyson's policies violated the FLSA. *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 893 (N.D. Iowa 2008). Under the FLSA, employers must pay the required minimum wage and overtime wages on the employees' regular payday—the statute does not "distinguish between late payment and nonpayment." *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993). In addition, pay must be credited on a "period by period" basis rather than netted over multiple pay periods. *Nolan v. City of Chicago*, 125 F. Supp. 2d 324, 332 (N.D. Ill. 2000). Tyson's arguments that its particular policies here did not violate the FLSA go to merits issues that the Court cannot resolve at the notice stage.

Tyson argues that the putative collective is not similarly situated because "there is substantial variation in, among other things, the (1) amount of hours employees worked in any given workweek during the Kronos outage; (2) whether their work hours during their workweek immediately prior to the Kronos outage accurately reflected their work hours during the first week of the Kronos outage; and (3) accuracy of manual timekeeping undertaken by each facility during the Kronos outage." (Doc. 27, p. 18). Many of these differences go to calculation of damages, which is always somewhat individualized and is an insufficient reason to deny conditional certification. Tyson also argues the specifics of its manual timekeeping differed somewhat from facility to facility, but the company admits the policy was present at each facility. Should significant individualized questions arise during discovery, Tyson will have an opportunity to move for decertification.

---

stage to only those workers who worked "more than 40 hours." One of Thornton's claims is that workers' hours were not tabulated correctly, and therefore the putative collective properly includes workers who ostensibly worked exactly 40 hours for a given week but, if Thornton's claim are correct, may have actually worked more than 40 hours that week.

Defendant also argues the collective should not be certified because Thornton has not shown other employees have an interest in joining this lawsuit. In her declaration, Thornton writes that she believes many of her coworkers would participate in this lawsuit if notified. (Doc. 24-1, ¶¶ 22–23). Six additional Tyson employees have already filed consents to join this lawsuit. *See* Docs. 5 & 6. Other district courts in the Eighth Circuit and elsewhere are split as to whether plaintiffs must affirmatively demonstrate interest in joining a collective action. *See Helmert v. Butterball, LLC*, 2009 WL 5066759, at *4–5 (E.D. Ark. Dec. 15, 2009) (collecting cases). This Court has consistently found it inappropriate to require rigorous proof of other class members' interest at such an early stage in the litigation. *See Harrison v. Hog Taxi, LLC, et al.*, 2019 WL 4280328, at * 4 (W.D. Ark. Sept. 10, 2019); *Rorie v. WSP2, LLC*, 2020 WL 6140450, at *4 (W.D. Ark. Oct. 19, 2020); *Farmer*, No. 3:21-CV-3027, Doc. 23, p. 9. Here, the Court similarly finds that Thornton need not provide additional proof that other Tyson workers wish to join this suit.

Accordingly, the Motion for Conditional Certification is **GRANTED** with respect to the following collective:

> **All current or former non-exempt employees of Tyson Foods, Inc. ("Tyson") (including its subsidiaries and alter egos) who worked in the United States for at least 40 hours in any one workweek during any pay period affected by Tyson's Kronos service outage, beginning on or about December 11, 2021, until January 15, 2022.**

### B. Notice

Having conditionally certified a collective, the Court must approve the notice to be sent to potential opt-in plaintiffs. The Court "ha[s] the discretion to manage the issuance of notice because the benefits derived from collective action dispute resolution 'depend on employees receiving accurate and timely notice concerning the pendency of the

11

collective action, so that they can make informed decisions about whether to participate.'" *Coates v. Dassault Falcon Jet Corp.*, 2017 WL 5598219, at *4 (E.D. Ark. Nov. 21, 2017) (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Thornton seeks a 60-day opt-in period and to send notice by mail and email. Thornton originally requested to also send notice by text message but withdrew that request in response to Tyson's objection. She also seeks to send a reminder notice to the potential collective members. Tyson asks the Court to approve a 45-day opt-in period, mail-only notice, and no reminder notice.

Consistent with its past practice, the Court finds a 60-day day notice period, a reminder notice, and notice by email and mail warranted in this case. The reminder may be sent to the collective 30 days after the initial Notice via email and U.S. mail. Thornton's proposed notice and consent documents (Doc. 24-9) are approved and may be hosted on a website created by Thornton. Tyson is to provide Thornton contact information for the collective members, as detailed below, no later than 14 days from the date of this Order.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Thornton's Motion for Conditional Certification (Doc. 23) is **GRANTED** as follows:

(1) A collective defined as "**all current or former non-exempt employees of Tyson Foods, Inc. ("Tyson") (including its subsidiaries and alter egos) who worked in the United States for at least 40 hours in any one workweek during any pay period affected by Tyson's Kronos service outage, beginning on or**

**about December 11, 2021, until January 15, 2022**" is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

(2)     Tyson is **ORDERED** to provide Thornton's counsel with contact information for the conditionally certified collective no later than 14 days from the date of this Order. The contact information should be in Excel (.xlsx) format and include each employee's full name; last known addresses with city, state, and zip code; last known e-mail addresses (non-company address if applicable); beginning dates of employment; and ending dates of employment (if applicable).

(3)     The proposed notice and consent forms attached to Thornton's Motion are **APPROVED**. Thornton is directed to send notice to the potential collective members by both mail and email within 10 days of receiving contact information from Tyson. The notice period will end 60 days after initial notice is sent, and a reminder notice, by email and mail, will be sent 30 days after the initial notice.

**IT IS SO ORDERED** on this 24th day of July, 2023.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE