**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | |
|---|---|
| ANNIE THORNTON, individually and on behalf of all others similarly situated,<br><br>v.<br><br>TYSON FOODS, INC. | **Case No. 5:22-cv-05077-TLB**<br>FLSA Collective Action<br><br>Judge Timothy L. Brooks |

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO APPROVE AMENDED SETTLEMENT AGREEMENT

Respectfully submitted,


**PARMET PC**
Matthew S. Parmet
TX Bar # 24069719
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5228
matt@parmet.law

**MORGAN & MORGAN, P.A.**
Andrew R. Frisch, Esq.
FL Bar # 027777
(*admitted pro hac vice*)
8151 Peters Road, 4th Floor
Plantation, Florida 33324
Telephone: (954) 327-5355
Facsimile: (954) 327-3013
Email: afrisch@forthepeople.com

**C. Ryan Morgan, Esq.**
FL Bar # 0015527
(*admitted pro hac vice*)
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone:(407) 420-1414
Email: rmorgan@forthepeople.com

**Attorneys for Plaintiffs**

## TABLE OF CONTENTS

**A. SUMMARY .......... 1**

**B. FACTUAL & PROCEDURAL BACKGROUND .......... 2**

**C. THE SETTLEMENT AGREEMENT .......... 4**

**D. ARGUMENT & AUTHORITIES .......... 6**

1. The Settlement represents a reasonable compromise of this litigation. .......... 6

1.1. Factor 1: The stage of litigation and amount of discovery exchanged. .......... 9

1.2. Factor 2: The experience of counsel. .......... 10

1.3. Factor 3: The probability of success on the merits. .......... 11

1.4. Factor 4: The settlement did not involve overreaching by the employer. .......... 22

1.5. Factor 5: The settlement is the result of arm's length negotiations based on the merits of the case. .......... 22

2. Notice should issue to the proposed collective. .......... 23

3. Consents will be filed with the Court before dismissal. .......... 23

4. The Court should allow reasonable service awards. .......... 24

5. Plaintiffs' attorneys' fees and litigation expenses are fair and reasonable, and they form part of the agreement between the Parties. .......... 26

5.1. Factor 1: The amount involved and the results obtained. .......... 28

5.2. Factor 2: Contingent nature of fees. .......... 31

5.3. Factor 3: Complexity of the litigation .......... 32

5.4. Factor 4: Experience, reputation, and ability of the attorneys. .......... 33

5.5. Factor 5: Awards in similar cases. .......... 33

6. A lodestar cross-check confirms the fee award. .......... 36

7. Plaintiffs' counsel is entitled to recover reasonable costs and expenses. .......... 43

**E. CONCLUSION .......... 44**

## TABLE OF EXHIBITS

| Ex. | Description |
|---|---|
| A | Settlement Agreement |
| B | Quote for Settlement Administration |
| C | Declaration of Matthew S. Parmet |
| D | Declaration of Andrew R. Frisch |
| E | Declaration of C. Ryan Morgan |
| F | Declaration of Annie Thornton |

**TABLE OF AUTHORITIES**

**Cases**

*Adams v. Centerfold Entm't Club, Inc.*, No. 6:17-cv-6047-SOH, 2018 WL 5784047 (W.D. Ark. Nov. 2, 2018) (Hickey, J.) ....................6

*Agbondinmwin v. The CSI Companies, Inc.*, No. 02-22-0001-36755 (AAA Jul. 17, 2023) ........40

*Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990)....................43

*Allshouse v. The Joshua Agency, LLC*, No. 1:21-CV-1032, 2023 WL 6166474 (W.D. Ark. Sept. 21, 2023) ....................33

*Amoral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (Cal.App. 1 Dist. 2008)....................18

*Andrews v. Pacific Process Systems., Inc.*, No. 2:16-cv-01135-CB, ECF No. 49 (W.D. Pa. Nov. 30, 2017)....................39

*Animal Legal Def. Fund, Inc. v. Perdue*, 292 F. Supp. 3d 315 (D.D.C. 2018) ....................40

*Anstead v. Sacred Heart Health System, Inc.*, No. 3:22-cv-02553-MCR-HTC, ECF No. 42 (N.D. Fla. Mar. 27, 2023) ....................11

*Atkinson v. Trinity Health Corp.*, No. 2:22-cv-11284-DPH-KGA, ECF No. 28 (E.D. Mich. Mar. 21, 2024) ....................10

*Barnes v. Abraham, Inc.*, No. 2:17-CV-279, 2017 WL 5714091 (S.D. Ohio Nov. 28, 2017) ....16

*Blackburn v. Conduent Com. Sols. LLC*, No. 1:19-CV-1229-RP, 2020 WL 9810023 (W.D. Tex. Dec. 22, 2020) ....................26

*Blanchard v. Bergeron*, 489 U.S. 87, 93, (1989) ....................35

*Blum v. Stenson*, 465 U.S. 886 (1984)....................37

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)....................29

*Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) ....42

*Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905 (MF), 09-1248 (MF), 09-4587 (MF), 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ....................34

*Brissette v. Heckler*, 784 F.2d 864 (8th Cir. 1986) ....................31

*Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855 (S.D. Ohio Nov. 8, 2018)......34

*Brodziak v. Runyon,* 145 F.3d 194 (4th Cir. 1998)....................28

*Brown v. Reddy ICE Corp.*, No. 4:14-cv-1786-RLW, 2016 WL 2930933 (E.D. Mo. May 19, 2016) ....................32

*Browne v. P.A.M. Transport, Inc.*, No. 5:16-cv-05366-TLB, ECF No. 300 (W.D. Ark. Jun. 31, 2020)....................34

*Caligiuri v. Symantec Corp.,* 855 F.3d 860 (8th Cir. 2017) ....................25

*Castillo v. Morales, Inc.*, No. 2:12-cv-00650, 2015 WL 13021899 (S.D. Ohio Dec. 22, 2015) .25

*Clancy v. Skyline Grill, LLC*, No. CIV. ELH-12-1598, 2012 WL 5409733 (D. Md. Nov. 5, 2012) ....................15

*Coach, Inc. v. Goodfellow*, No. 2:10-cv-02410-V, 2012 WL 12868277 (W.D. Tenn. May 22, 2012) ....................36

*Cobbs v. Iamar, LLC*, No. 2:21-CV-5075, 2022 WL 20475953 (S.D. Ohio Sept. 6, 2022). 16, 17

*Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008 (S.D. Ohio Jan. 25, 2011)....................32

*Cortez v. Purolator Air Filtration Prod. Co.*, 999 P.2d 706 (Cal. 2000) ....................19

*Cosgrove v. Citizens Auto. Fin., Inc.*, No. 09-1095, 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011) ....................21

*Cosgrove v. Sullivan*, 759 F.Supp. 166 (S.D.N.Y. 1991)....................42

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000)....................21

*Curtis v. Genesis Eng'g Sols., Inc.*, No. GJH-21-722, 2022 WL 1062024 (D. Md. Apr. 8, 2022) ....................24

*D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946) ....................7

*Daniels v. Prod. Mgmt. Indus., LLC*, No. 6:15-cv-02567, 2018 WL 1954352 (W.D. La. Apr. 20, 2018)....................34

*Del Toro v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2021 WL 1784368 (E.D. Mo. May 5, 2021) ....................26, 27, 33

*Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H–99–4137, Civ.A.H–99–4212, 2001 WL 34633373 (S.D. Fla. Dec. 19, 2001) ....................42

*Domingue v. Sun Elec. & Instrumentation, Inc.*, No. CIV.A. 09-682, 2010 WL 1688793 (M.D. La. Apr. 26, 2010)....................9

*Edelen v. Am. Residential Servs., LLC*, No. CIV.A. DKC 11-2744, 2013 WL 3816986 (D. Md. July 22, 2013) ....................24

*Enegren v. KC Lodge Ventures LLC*, No. 17-2285-DDC-GEB, 2019 WL 5102177 (D. Kan. Oct. 11, 2019) ....................34

*Est. of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 WL 1966062 (S.D. Ohio May 17, 2021)....................17

*Estevez v. Change Healthcare, Inc.*, No. 3:22-cv-00327, ECF No. 35 (M.D. Tenn. Jun 13, 2023) .................... 10, 35

*Evans v. Jeff D.*, 475 U.S. 717 (1986) ....................8

*Faught v. American Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2012) ....................27

*Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994)....................26

*Ferrell v. Buckingham Prop. Mgmt.*, No. 119CV00332NONESAB, 2020 WL 4364647 (E.D. Cal. July 30, 2020) ....................13

*Futrell v. Cargill, Inc.*, No. 0:22-cv-00969-JRT-DJF, ECF No. 69 (D. Minn. Dec. 6, 2023)...10, 24, 35

*Gardner v. HCL Am., Inc.*, No. 20-cv-2340 (ECT/DTS), 2021 WL 6776552 (D. Minn. Oct. 6, 2021)...7

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016)...21, 30, 31

*Giguere v. Port Res. Inc.*, 927 F.3d 43 (1st Cir. 2019)...16

*Gray v. CJS Sols. Grp., LLC*, Civ. No. 19-1008 (PAM/DTS), 2021 WL 4151007 (D. Minn. Sept. 13, 2021)...8, 25

*Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016)...41

*Haralson v. United Airlines, Inc.*, 224 F.Supp.3d 928 (N.D. Cal. 2016)...17

*Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878 (S.D. Ind. May 3, 2023)...11

*Harvey v. Community Health Network, Inc.*, No. 1:22-cv-00659-RLM-MJD, ECF No. 104 (S.D. Ind. Sept. 18, 2023)...10

*Harvey v. Morgan Stanley Smith Barney, LLC*, No. 3:18-cv-02835-WHO, 2020 WL 1031801 (N.D. Cal. Mar. 3, 2020)...19

*Heffernan Bryant v. Un. Furniture Indus., Inc.*, 1:13-cv-246-SA-DAS, 2017 WL 639320 (N.D. Miss. Feb. 16, 2017)...34

*Henderson v. Johnson Controls Inc.*, No. 2:22-cv-00414, ECF No. 26 (E.D. Wisc. Apr. 20, 2023)...11, 24

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)...26, 28

*Hightower v. Waste Pro of Florida, Inc.*, No. 4:22-cv-00076-MW-MAF, ECF No. 39 (N.D. Fla. Sept. 23, 2022)...40

*Hill-Smith v. Silver Dollar Cabaret, Inc.*, No. 5:20-CV-5051, 2020 WL 4741917 (W.D. Ark. Aug. 14, 2020)...37, 38

*Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386 (D. Kan. Jan. 3, 2017)...34

*Holcombe v. Midwest Outdoor Concepts, LLC*, No. 5:22-CV-5161, 2023 WL 3077856 (W.D. Ark. Apr. 25, 2023)...37

*Holden v. Burlington N., Inc.*, 665 F. Supp. 1398 (D. Minn. 1987)...8

*Hughes v. Franciscan Alliance, Inc.*, No. 1:22-cv-00675, ECF No. 70 (S.D. Ind. Feb. 20, 2024)10

*Hurst v. Buczek Enterps., LLC*, 870 F.Supp.2d 810 (N.D. Cal. 2012)...18

*Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017)...33

*In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002)...42

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)...43

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ....................................................15

*In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999) ......................................42

*In re Charter Communications, Inc., Sec. Litig.*, No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ........................................................................42

*In re Flint Water Cases*, 583 F.Supp.3d 911 (E.D. Mich. 2022) ..........................................21

*In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011)...................................................................................31, 33, 36

*In re Rite Aid Corp. Secs. Litig.*, 362 F.Supp.2d 587 (E.D. Pa. 2005) ...................................42

*In re RJR Nabisco*, 1992 WL 210138 (S.D.N.Y. Aug.24, 1992) .........................................42

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057 (8th Cir. 2013) 8, 25

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005)...................................................................................................27, 37

*In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319391 (S.D. Fla. Aug. 5, 2013).............................................................................................27

*Johnson v. Himagine Sols., Inc.*, No. 4:20-cv-00574-SPM, 2021 WL 2634669 (E.D. Mo. June 25, 2021) ..................................................................................................22

*Johnson v. Himagine Sols., Inc.*, No. 4:20-cv-00574-SPM, 2021 WL 2634669, at *7 (E.D. Mo. June 25, 2021) ...........................................................................................32

*Johnson v. Himagine Solutions, Inc.*, No. 4:20-CV-00574-SPM, 2021 WL 2634669 (E.D. Mo. June 25, 2021) ...........................................................................................33

*K7 Design Gp., Inc. v. Walmart, Inc.*, No. 5:21-CV-5069-CDC, 2024 WL 756284 (W.D. Ark. Feb. 2, 2024)..................................................................................................40

*Keddy v. OneFlow Energy Servs., LLC*, No. 5:17-cv-00142-C, ECF No. 20 (W.D. Okla. Jan. 9, 2018)........................................................................................................39

*Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) ...........................................................27, 36

*King v. Raineri Const., LLC*, No. 4:14-CV-1828 (CEJ), 2015 WL 631253 (E.D. Mo. Feb. 12, 2015).........................................................................................................33

*Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468 (5th Cir. 2011)........................................8

*Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ........25

*Legros v. Mud Control Equip., Co.,* No. 15-1082, 2017 WL 925730 (W.D. La. Mar. 6, 2017) ..34

*Lewis v. The GEO Gp., Inc.*, No. 5:08-cv-00881-M, ECF No. 246 (W.D. Okla. Jun. 14, 2011)39

*liams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) .....................................30

*Lopez v. Lawns 'R' Us*, No. CIV. DKC 07-2979, 2008 WL 2227353 (D. Md. May 23, 2008) .15

*Lyons v. Gerhard's Inc.*, No. 14-06693, 2015 WL 4378514 (E.D.Pa.2015)............................34

*Mabry v. Hildebrandt*, No. 14-cv-5525, 2015 WL 5025810 (E.D. Pa. Aug. 24, 2015) ...........34

*Manning v. Gold Belt Falcon, LLC*, 817 F.Supp.2d 451 (D.N.J. 2011) ....................................24
*Maravilla v. Rosas Bros. Constr., Inc.*, 401 F.Supp.3d 886 (N.D. Cal. 2019)............................19
*Marshall v. Coca-Cola Consolidated Inc.*, No. 3:22-cv-00214-RJC-SCR, ECF No. 27 (W.D.N.C. Oct. 18, 2023)............................................................................................ 10, 35
*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007)..................................29
*Matthews v. Priority Energy Servs., LLC*, 2018 WL 1939327 (W.D. Tex. April 20, 2018).........34
*McClean v. Health Sys., Inc.*, No. 6:11-cv-03037-DGK, 2015 WL 12426091 (W.D. Mo. June 1, 2015).................................................................................................................32
*McClean v. Health Sys.*, No. 6:11-cv-03037-DGK, 2015 WL 12513703 (W.D. Mo. Aug. 4, 2015).................................................................................................................25
*McGowan v. CFG Health Network, LLC*, No. 3:28-cv-02770-ZNQ-RLS, ECF No. 42 (D.N.J. Mar. 28, 2024) .....................................................................................................10
*Meller v. Bank of the West*, No. 3:18-cv-00033-JAJ-SBJ, 2018 WL 5305562 (S.D. Iowa Sept.10, 2018).................................................................................................................34
*Merkner v. AK Steel*, No. 1:09–CV–423–TSB (S.D. Ohio Jan. 10, 2011) .............................42
*Mondrian v. Trius Trucking, Inc.*, No. 119CV00884DADSKO, 2022 WL 2306963 (E.D. Cal. June 27, 2022) .....................................................................................................13
*Monroe v. FTS USA, LLC*, No. 208CV02100JTFCGC, 2020 WL 13227389 (W.D. Tenn. Oct. 13, 2020) ..........................................................................................................38
*Murdock v. McNair*, No. 5:17-CV-05225, 2018 WL 6314569 (W.D. Ark. Dec. 3, 2018) ........37
*Murphy v. Ajinomoto Windsor*, No. l:15-cv-00120-JAR, 2018 WL 11312002 (E.D. Mo. Mar. 26, 2018) ..........................................................................................................25
*Netzel v. W. Shore Grp., Inc.*, No. 16-cv-2552 (RHK/LIB), 2017 WL 1906955 (D. Minn. May 8, 2017)..............................................................................................................8
*Newell v. Ensign United States Drilling (California) Inc.*, No. 119CV01314NONEJLT, 2021 WL 6000227 (E.D. Cal. Dec. 20, 2021) ....................................................................13
*O'Connor v. Uber Techs., Inc.*, 201 F.Supp.3d 1110 (N.D. Cal. 2016)....................................19
*Oliver v. Centene Corp.*, 2023 WL 3072651 (E.D. Mo. Apr. 25, 2023)....................................8
*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ...................................................27
*Pike v. Grkstl Transportation, Inc.*, No. 4:22-CV-04018, 2024 WL 561121 (W.D. Ark. Feb. 12, 2024)............................................................................................................6, 7
*Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2008 WL 9410399 (S.D. Tex. May 7, 2008) ......................................................................................................................34
*Rawa v. Monsanto Co.*, 934 F.3d 862 (8th Cir. 2019) .........................................................42
*Rawa v. Monsanto Co.,* 934 F.3d 862, 871 (8th Cir. 2019) ....................................................8
*Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613 (S.D. Tex. 1979).................................................24

*Roberts v. Texaco*, Inc., 979 F.Supp. 185, 200 (S.D.N.Y. 1997) ............................................42

*Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (Ex), 2016 WL 7486600 (C.D. Ca. Sept. 27, 2016) ..........................................................................................19

*Salinas v. U.S. Xpress Enterprises, Inc.*, No. 113CV00245TRMSKL, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) ..........................................................................................34

*Salome v. Cushman & Wakefield U.S. Inc.*, No. 4:21-cv-01151-RWS, ECF No. 110 (E.D. Mo. Feb. 9, 2023) ..........................................................................................33

*Sanchez v. Stonegate Senior Living, LLC*, No. 3:22-cv-00864-E, ECF No. 21 (N.D. Tex. Feb. 14, 2023) .......................................................................................... 11, 35

*Sarabia v. Spitzer Indus., Inc.*, 4:17-cv-2092, 2018 WL 6046327 (S.D. Tex. Nov. 19, 2018).....34

*Schneider v. Habitat for Humanity Int'l, Inc.*, No. 5:14-CV-5230-TLB, 2015 WL 500835 (W.D. Ark. Feb. 5, 2015) ..........................................................................................6

*Seow v. Miyabi Inc.*, No. 19-cv-2692 (JNE/DTS), 2021 WL 3616894 (D. Minn. July 15, 2021) ..........................................................................................12

*Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D. Tex. 2000) ..........28

*Shepardson v. Midway Indus., Inc.*, No. 3:18-CV-3105, 2019 WL 2743435 (W.D. Ark. July 1, 2019) ..........................................................................................7

*Sherman v. Kasotakis*, 314 F. Supp. 2d 843 (N.D. Iowa 2004) ............................................37

*Singh v. Roadrunner Intermodal Servs., LLC*, No. 115CV01497DADBAM, 2018 WL 2412325 (E.D. Cal. May 29, 2018) ..........................................................................................14

*Smith v. Loc. Cantina, LLC*, No. 2:20-CV-03064, 2022 WL 1183325 (S.D. Ohio Apr. 19, 2022) ..........................................................................................17

*Smith v. Sodexo, Inc.*, No. 8:22-cv-00984-PX, ECF No. 54 (D. Md. Aug. 14, 2024).............10

*Sorace v. Wells Fargo Bank, N.A.*, No. CV 20-4318, 2024 WL 643229 (E.D. Pa. Feb. 15, 2024) ..........................................................................................21

*Stainbrook v. Minn. Dep't of Pub. Safety*, 239 F. Supp. 3d 1123 (D. Minn. 2017)......................7

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)..........................................................27

*Stevens v. PepsiCo Inc.*, No. 7:22-cv-00802-NSR, ECF No. 73 (S.D.N.Y. Dec. 2, 2022) .........11

*Stevens v. PepsiCo, Inc.*, No. 7:22-cv-00802-NSR, ECF No. 79 (S.D.N.Y. Apr. 4, 2023).........11

*Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ..32

*Tanner v. Empire Financing, Co.*, No. 4:19-cv-0825-SEP, 2020 WL 7316115 (E.D. Mo. Dec. 11, 2020) ..........................................................................................34

*Thompson v. Spa City Steaks, Inc.*, No. 6:17-CV-6055, 2019 WL 5653215 (W.D. Ark. Oct. 31, 2019) ..........................................................................................6

*Toliver v. Jbs Plainwell, Inc.*, No. 1:11-cv-302, 2015 WL 11255451 (W.D. Mich. Aug. 20, 2015) ..........................................................................................43

*Tyndall v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5597 (AAA, Aug. 12, 2024)..........40
*Vanegas v. Diaz Granados, Inc.*, No. PWG-15-2298, 2017 WL 345855 (D. Md. Jan. 24, 2017) ..........15
*Walker v. U.S. Dept. of Hous. & Urban Dev.*, 99 F.3d 761 (5th Cir. 1996)..........43
*Washington State Nurses Ass'n v. MultiCare Health Sys.*, 535 P.3d 480 (Wash. Ct. App. 2023)..20
*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ..........30
*Wiley v. Portfolio Recovery Assocs., LLC*, 594 F. Supp. 3d 1127 (D. Minn. 2022)..........37
*Wineland v. Case's Gen. Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009)..........26
*Wolfe v. Anchor Drilling Fluids USA Inc.*, No. 4:15-cv-1344, 2015 WL 12778393 (S.D. Tex. Dec. 7, 2015)..........34
*Woodard v. Navient Sols., LLC*, No. 8:23CV301, 2024 WL 94468 (D. Neb. Jan. 9, 2024).....21
*Woodruff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) ..........11
*Woorduff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) ..........35
*Wright v. Tyler Techs., Inc.*, No. 4:20-CV-00454 KGB, 2021 WL 4255287 (E.D. Ark. Sept. 17, 2021)..........38
*Yeager v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5595 (AAA, Aug. 12, 2024)..........40
*Yeager v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5601 (AAA, Aug. 12, 2024)..........41

**Statutes**

29 U.S.C. § 216 ..........26
CAL. LAB. CODE § 203 ..........22
CAL. LAB. CODE § 226 ..........22
Md. Code Ann., Lab & Empl. § 3-507.2 ..........18
Md. Code Ann., Lab. & Empl. § 3-415 ..........18
Md. Code Ann., Lab. & Empl. § 3-501 ..........18
Ohio Rev. Code § 2307.60 ..........21
Ohio Rev. Code § 4111 ..........20
Ohio Rev. Code § 4111.10 ..........20
Ohio Rev. Code § 4113.15 ..........20

**Other Authorities**

FiercePharma, *Pfizer asks hourly staffers to return overpayments in aftermath of vendor's cyberattack: reports*, https://www.fiercepharma.com/pharma/pfizer-asks-staffers-return-overpayments-aftermath-timeclock-service-cyberattack (Apr. 1, 2022) ..........20

The Oregonian, *Oregon hospital is asking its employees to repay $2 million mistakenly paid in wages*, https://www.oregonlive.com/business/2022/08/st-charles-hospital-asks-employees-to-repay-2-million-in-wages.html (Aug. 13, 2022)....20

U.S. OFFICE OF PERSONNEL MANAGEMENT, 2024 Locality Pay Area Definitions, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2024/locality-pay-area-definitions/ (last accessed Oct. 23, 2024)....39

USA Today, *Ransomware attack on Kronos could disrupt how companies pay, manage employees for weeks*, https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (Dec. 13, 2021)....2

WSOC-TV, *Workers overpaid during cyberattack told they have to pay employers back*, https://www.wsoctv.com/news/local/workers-overpaid-during-cyberattack-told-they-have-pay-employers-back/CLPISHDASNAKLL4IIHQ4CTZ6XY/ (May 31, 2022)....20

**Treatises**

American Law Institute, Principles of the Law of Aggregate Litigation (2010)....27

FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (4th)....37

## A. SUMMARY

Plaintiffs request the Court approve the amended settlement reached in this Fair Labor Standards Act (FLSA) case. The Amended Settlement Agreement represents the culmination of Plaintiffs' and Plaintiffs' counsel's investigation, litigation, and negotiation. It completely resolves Plaintiffs', and the rest of the collective's, claims at issue in this lawsuit.

Tyson has defended the claims in this lawsuit and continues to deny any wrongdoing, the violation of any federal or state wage-and-hour law, and any damages at issue. Absent the settlement, Plaintiffs' and the proposed collective's claims would remain subject to the inherent risks of litigation and trial. Instead of remaining exposed to these risks, the proposed settlement is fair and reasonable, and it will provide meaningful relief to Plaintiffs and the similarly situated employees of Tyson who opt-into the Settlement.

The Parties have made significant revisions to their settlement consistent with the Court's direction during the prior hearings with the Court. *See* ECF Nos. 47, 56. The Amended Settlement Agreement addresses the issues outlined by the Court, and Plaintiffs have provided additional briefing that speaks to the concerns expressed by the Court.

For these reasons, settlement of this matter is in the best interest of Plaintiffs and the proposed collective members. Plaintiffs requests the Court approve the Parties' Amended Settlement Agreement, including notice to the collective, and allow Tyson's affected employees to join the settlement.

## B. FACTUAL & PROCEDURAL BACKGROUND

Tyson and its subsidiaries produce and distribute various food products. ECF No. 1, at ¶ 36.[1] To track its employees' time, Tyson used a Kronos system provided by the Ultimate Kronos Group, Inc. (UKG). ECF No. 24-7, Tyson's Rog Responses, at ¶ 4.

UKG reported a cyberattack on the Kronos system beginning on or about December 11, 2021, which made Kronos inoperable. T USA Today, *Ransomware attack on Kronos could disrupt how companies pay, manage employees for weeks*, https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (Dec. 13, 2021).

Once the Kronos system was inaccessible, Thornton alleges Tyson adopted uniform policies with respect to calculating employee wages. For example, she alleges Tyson took the preceding pay period, ending December 4, 2021, which contained the Thanksgiving holiday, and duplicated it for at least the pay period ending December 11, 2021. ECF No. 24-5, Tyson FAQ, at ¶ 3. For the week ending December 18, 2021, Tyson began using a manual timekeeping system. *Id.* at ¶ 4. Thornton claims these uniform policies and practices led to the failure to pay all earned wages, including minimum wages and/or overtime, to Thornton and Tyson's other affected employees. Tyson later completed a reconciliation for unpaid or delayed wages of affected employees. *See* ECF No. 24-4, Thornton pay stub. For example, Thornton was paid outstanding wages on May 19, 2022. *Id.*

[1] The Tyson facilities at issue, based upon discovery and agreement of the parties are those operated by the following Tyson subsidiaries: Advance Food Company LLC, AdvancePierre Foods, Inc., Allied Specialty Foods, Inc., Barber Foods, LLC, Cloverdale Farms, LLC, Cobb-Heritage, LLC, Keystone Foods, LLC, Original Philly Holdings, Inc., and The Hillshire Brands Company. Throughout this motion, for simplicity, Thornton refers to these subsidiaries and Tyson as "Tyson."

On April 22, 2022, Thornton brought suit to recover for any unpaid or delayed wages, including overtime, and liquidated damages owed to Plaintiffs and Tyson's allegedly similarly situated employees as a result of the Kronos Outage. ECF No. 23. Given that Tyson paid outstanding wages after the lawsuit was commenced, the damages at issue in this case focused on Plaintiffs' and similarly situated employees' liquidated damages under the FLSA. Following Tyson's appearance, Plaintiffs' and Tyson's counsel worked to arrange an exchange of significant data regarding the Kronos outage, time and pay policies, and Tyson's reconciliation process to enable the parties to engage in early mediation. The parties ultimately mediated on January 9, 2023, in a full-day mediation with Dennis Clifford, a highly regarded labor law neutral with significant experience in labor and employment and wage-and-hour litigation. Despite the parties' efforts, however, a settlement could not be reached at that time.

After the unsuccessful mediation, the parties engaged in written, pre-certification discovery. Thornton then filed a motion for FLSA conditional certification on May 1, 2023, which was ultimately granted by the Court on July 24, 2023. ECF No. 33. After the collective was conditionally certified, the parties agreed to engage in a second mediation with Mr. Clifford, which they parties agreed would take place before notice issued to the collective.

On October 25, 2023, the parties held their second full-day mediation with Mr. Clifford. With the assistance of Mr. Clifford, the Parties were able to achieve significant progress in their discussions. However, a settlement was not reached at the mediation. Mr. Clifford continued to work with the parties over the following two weeks and issued a mediator's proposal. That proposal was ultimately accepted by both parties. The Parties reported the settlement to the Court on December 15, 2023. ECF No. 36. After, with further

work between the Parties and their counsel, the Parties were able to reach an initial settlement agreement.

Plaintiffs sought approval of the initial settlement on February 29, 2024. ECF No. 43. The Court held a hearing on the motion on June 4, 2024. ECF No. 47. During the hearing, the Court raised questions and concerns regarding the settlement. As a result, Plaintiffs withdrew the motion to allow the Parties to renegotiate various aspects of the settlement. ECF No. 48. However, the Parties were unable to reach final terms of an amended settlement agreement until after another Court hearing on October 1, 2024. ECF No. 56. Following that hearing, the Parties reached out to Mr. Dennis, and then worked together to finalize agreeable terms to address the Court's prior concerns. As a result, an Amended Settlement Agreement was reached.

### C. THE AMENDED SETTLEMENT AGREEMENT

The Amended Settlement Agreement has been filed as Exhibit A. Under the Amended Settlement, putative collective members will receive a notice of the settlement and a check in the initial mailing. To opt-into the lawsuit, putative collective members need only cash their checks. Following the initial round of payments, any undistributed portion will be reallocated, and a second round of checks will be issued. Following the second round, any remainder will be sent to a cy pres recipient. Tyson will not receive any reversion.

In all, the Amended Settlement will provide a fair, reasonable, and adequate recovery to all non-exempt employees of Tyson who choose to opt-into it. Any of these current or former employees, who are non-exempt individuals working across the United States and who worked statutory overtime and were impacted by the Kronos Outage during the pay periods affected by the Kronos outage, will be notified of, and are eligible to join, the Settlement.

Notably, as explained above, Tyson has already paid Plaintiffs and putative collective members any outstanding wages, leaving liquidated damages as the only available remedy. The total value of the settlement is approximately $4,823,701.62, consisting of: (1) a new settlement fund of $2,050,000.00 to be distributed to collective members (representing liquidated damages for delayed wages ultimately repaid); and (2) forgiveness of approximately $2,773,701.62 in wages that had already been paid to collective members, and for which Tyson may have been able to recoup (net-overpayments). Under the Amended Settlement Agreement, Tyson will pay all collective members who were initially net-underpaid a proportional amount of the unpaid wages as liquidated damages. Additionally, under the Amended Settlement Agreement, Tyson will forego recoupment of any overpayments made as to each allegedly net-overpaid employee, a significant value to these collective members.

The Amended Settlement Agreement does not create any complicated claims process. Once the Settlement is approved, it will be administered by an independent settlement administrator, who will deliver the proposed notice forms and checks to all putative collective members. To opt-into the settlement and obtain their settlement payments, putative collective members need only cash their checks.

Potential collective members who choose to opt-in will be paid from a net settlement fund (administered by the independent settlement administrator) which will be used to pay the settlement awards, service awards, Collective Counsel's fees and expenses, and the cost of the settlement administrator.[2] Once the opt-in period is over, the net settlement fund will be redistributed twice. First, any amount that is not claimed during the opt-in period will be

[2] Administration expenses are estimated to total $78,985.00. Ex. B.

redistributed to those putative collective members that have chosen to join the lawsuit. Then, following the second payment period, any amount remaining in the settlement fund will be distributed cy pres. Collective Counsel's proposed fees amount to only approximately 17% of the gross settlement amount (that is, the common fund), as Collective Counsel's fees were calculated as a percentage of only the new funds paid under the settlement, and not the gross monetary settlement amount. No amount of the settlement will be redistributed back to Tyson.

## D. Argument & Authorities

### 1. The Settlement represents a reasonable compromise of this litigation.

"[T]he law is unclear in the Eighth Circuit as to whether judicial approval of a proposed private release of FLSA claims is in all cases required before dismissal." *Thompson v. Spa City Steaks, Inc.*, No. 6:17-CV-6055, 2019 WL 5653215, at *1 (W.D. Ark. Oct. 31, 2019) (Hickey, C.J.) (quotation omitted). Courts in this District, "including this Court, have held that judicial approval of an FLSA settlement is unnecessary when the lawsuit does not involve a certified class or collective action, all plaintiffs have been represented by counsel throughout the entirety of the case, and the parties wish for their agreement to remain private." *Pike v. Grkstl Transportation, Inc.*, No. 4:22-CV-04018, 2024 WL 561121, at *1 (W.D. Ark. Feb. 12, 2024) (Hickey, C.J.) (citing *Adams v. Centerfold Entm't Club, Inc.*, No. 6:17-cv-6047-SOH, 2018 WL 5784047, at *1 (W.D. Ark. Nov. 2, 2018) (Hickey, J.); *Schneider v. Habitat for Humanity Int'l, Inc.*, No. 5:14-CV-5230-TLB, 2015 WL 500835, at *3 (W.D. Ark. Feb. 5, 2015) (Brooks, J.)). This Court has also concluded that, "after litigation begins, the prevailing trend is that the parties must obtain judicial approval of their FLSA settlement agreements and may do so only after the district court approves the settlement and enters a corresponding judgment."

*Shepardson v. Midway Indus., Inc.*, No. 3:18-CV-3105, 2019 WL 2743435, at *2 (W.D. Ark. July 1, 2019) (Brooks. J.). Given the Court's ruling in *Shepardson*, and because the Amended Settlement Agreement involves a proposed collective action, Plaintiffs seek judicial approval of the settlement. *Pike*, 2024 WL 561121, at *1 ("The Court previously certified this matter as a collective action, so it will review the settlement agreement submitted by the parties for reasonableness.").

"When a district court reviews a proposed FLSA settlement, it may approve the settlement agreement after it determines that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." *Stainbrook v. Minn. Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017); *see also*, *e.g.*, *Shepardson*, 2019 WL 2743435, at *2 (same). "A settlement addresses a bona fide dispute when it reflects a reasonable compromise over issues that are actually in dispute." *Stainbrook*, 239 F.Supp.3d at 1126 (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 115 (1946)).

In determining whether a settlement is fair and equitable under the FLSA, the Court "may consider a multitude of factors, including (1) the stage of the litigation and the amount of discovery exchanged, (2) the experience of counsel, (3) the probability of the Plaintiffs' success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case." *Stainbrook* at 1126; *Gardner v. HCL Am., Inc.*, No. 20-cv-2340 (ECT/DTS), 2021 WL 6776552, at *1 (D. Minn. Oct. 6, 2021) (same); *Shepardson*, 2019 WL 2743435, at *2 (same).

In evaluating an FLSA collective action settlement, the Court only ensures the "settlement reached in adversarial proceedings represents a fair compromise of a bona fide

wage and hour dispute and is fair and reasonable for all who are affected by it." *Gray v. CJS Sols. Grp., LLC*, Civ. No. 19-1008 (PAM/DTS), 2021 WL 4151007, at *1 (D. Minn. Sept. 13, 2021). "In making a fairness determination, courts should be mindful of the strong presumption in favor of finding a settlement fair." *Netzel v. W. Shore Grp., Inc.*, No. 16-cv-2552 (RHK/LIB), 2017 WL 1906955, at *2 (D. Minn. May 8, 2017) (internal quotation marks omitted); *see also In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) ("A settlement agreement is presumptively valid." (internal quotation marks omitted)); *Oliver v. Centene Corp.*, 2023 WL 3072651, at *2 (E.D. Mo. Apr. 25, 2023) ("There is a strong presumption in favor of finding a settlement fair.").

The Parties have fully executed the proposed settlement agreement for review. The Court has the authority to approve the settlement or decline approval—or even to suggest additional or modified terms that would meet with the Court's approval—but cannot modify the agreement itself. *See Rawa v. Monsanto Co.,* 934 F.3d 862, 871 (8th Cir. 2019) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." (quoting *Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) (brackets in original)); *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1406 (D. Minn. 1987) ("[T]he Court … is limited in its ability to change that agreement. The proposed settlement must stand or fall as a whole. The Court is not to dictate or rewrite the terms of the proposed agreement. The Court can make suggestions for modification of the proposed settlement's terms … but it cannot unilaterally change them." (internal citations omitted)); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement").

### 1.1. Factor 1: The stage of litigation and amount of discovery exchanged.

This case was settled during litigation between the Parties. "[T]hat this settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Domingue v. Sun Elec. & Instrumentation, Inc.*, No. CIV.A. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010). Indeed, it was resolved only after substantial investigation and work by the Parties and their counsel, as well as the significant and hotly contested motion practice described above. The work undertaken by Plaintiffs and Plaintiffs' counsel included:

- Investigation of Tyson and its management and structure;
- Interviewing Plaintiff and potential opt-ins;
- Review of Department of Labor database and records;
- Review of court records for similar or related cases involving Tyson and its related corporate entities;
- Review of legal authority, including court orders and administrative guidance, regarding legal issues before and during the course of the lawsuit;
- Drafting, filing, and serving Plaintiff's complaint;
- Drafting and sending Plaintiffs' disclosures;
- Reviewing Plaintiff and opt-in Plaintiffs' documents and production;
- Drafting and serving written discovery on Tyson;
- Reviewing Tyson's written discovery responses;
- Reviewing Tyson's production, including payroll and time documents and data;
- Analyzing and processing data for Plaintiffs and the potential collective's payroll, including creating a damage model for the data;
- Drafting and filing documents with the Court, including Plaintiffs' motion for conditional certification;
- Attending two full-day mediations;

- Negotiating and finalizing the Parties' initial Settlement Agreement and approval documents; and
- Negotiating and finalizing the Parties' Amended Settlement Agreement and approval documents.

If the case were not settled, there would be extensive work to come, including written discovery to and from all Parties and associated discovery disputes, depositions of both sides, dispositive motions, and questions regarding applicability of the FLSA and state laws under the somewhat unique circumstances of this case, Plaintiffs' damages, Tyson's alleged good faith and willfulness, decertification, a jury trial, and potential appeals.

In all, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Plaintiffs in particular) recognized that the settlement represented a compromise of the range and certainty of damages.

**1.2. Factor 2: The experience of counsel.**

Here, Plaintiffs' Counsel has significant experience in litigating and resolving not only wage-and-hour claims generally, but also wage-and-hour claims related to the Kronos Outage particularly. *See*, *e.g.*, *Smith v. Sodexo, Inc.*, No. 8:22-cv-00984-PX, ECF No. 54 (D. Md. Aug. 14, 2024); *McGowan v. CFG Health Network, LLC*, No. 3:28-cv-02770-ZNQ-RLS, ECF No. 42 (D.N.J. Mar. 28, 2024); *Atkinson v. Trinity Health Corp.*, No. 2:22-cv-11284-DPH-KGA, ECF No. 28 (E.D. Mich. Mar. 21, 2024); *Hughes v. Franciscan Alliance, Inc.*, No. 1:22-cv-00675, ECF No. 70 (S.D. Ind. Feb. 20, 2024); *Futrell v. Cargill, Inc.*, No. 0:22-cv-00969-JRT-DJF, ECF No. 69 (D. Minn. Dec. 6, 2023); *Marshall v. Coca-Cola Consolidated Inc.*, No. 3:22-cv-00214-RJC-SCR, ECF No. 27 (W.D.N.C. Oct. 18, 2023); *Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-00659-RLM-MJD, ECF No. 104 (S.D. Ind. Sept. 18, 2023); *Estevez v. Change Healthcare, Inc.*, No. 3:22-cv-00327, ECF No. 35 (M.D. Tenn. Jun 13, 2023); *Woodruff v. Kaiser Aluminum*

*Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023); *Henderson v. Johnson Controls Inc.*, No. 2:22-cv-00414, ECF No. 26 (E.D. Wisc. Apr. 20, 2023); *Stevens v. PepsiCo, Inc.*, No. 7:22-cv-00802-NSR, ECF No. 79 (S.D.N.Y. Apr. 4, 2023); *Anstead v. Sacred Heart Health System, Inc.*, No. 3:22-cv-02553-MCR-HTC, ECF No. 42 (N.D. Fla. Mar. 27, 2023); *Sanchez v. Stonegate Senior Living, LLC*, No. 3:22-cv-00864-E, ECF No. 21 (N.D. Tex. Feb. 14, 2023). Plaintiffs' counsel's experience in these claims has been specifically noted by courts in these matters. *See*, *e.g.*, *Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878, at *2 (S.D. Ind. May 3, 2023) (preliminarily approving wage-and-hour class and collective action settlement and recognizing both Morgan & Morgan and Parmet PC as "experienced counsel familiar with the applicable facts and law"), *final approval granted*, ECF No. 102 (Sept. 8, 2023); *Stevens v. PepsiCo Inc.*, No. 7:22-cv-00802-NSR, ECF No. 73, at *4, 6 (S.D.N.Y. Dec. 2, 2022) (acknowledging wage-and-hour plaintiffs' counsel, including Morgan & Morgan and Parmet PC, as "competent and experienced counsel" that achieved a "commendable result, given the complexities of this Litigation").

Based on their experience and the facts of this case, Plaintiffs' counsel agrees the Settlement Agreement is a fair and reasonable compromise of a bona fide dispute regarding the claims alleged by Plaintiffs in light of the settlement factors. Ex. C, Parmet decl., at § D.

**1.3. Factor 3: The probability of success on the merits.**

Under the unique facts presented by this case, the compromised settlement represents a fair compromise of the claims. While Plaintiff strongly believes in the merits of her claims, Tyson planned significant defenses to liability and liquidated damages. In particular, Tyson intended to argue that workers suffered no cognizable injury under the FLSA, in part because they had already been paid any amounts that had initially been underpaid or unpaid. Tyson

also intended to claim they were victims of the cyberattack that shut down the Kronos system, which was beyond its control, that it acted in good faith after the onset of the system outage, and that it paid its employees as soon as practicable under the circumstances. Finally, Tyson would have argued for decertification of the collective based on the collective's time and pay practices during the outage. If Tyson succeeded, Plaintiffs' FLSA claims would be worth $0. In all, when these risks are weighed against the settlement relief obtained here, the settlement is more than fair and reasonable. The Parties therefore could have litigated these issues for years, including through discovery, trial, and appeal, with no guarantee of success for Plaintiff and the proposed collective. *See Seow v. Miyabi Inc.*, No. 19-cv-2692 (JNE/DTS), 2021 WL 3616894, at *2 (D. Minn. July 15, 2021) ("Plaintiffs maintain that their FLSA claims are strong and can be proven at trial. However, a finding of liability is never assured, and the settlement agreement avoids delay and uncertainty.") This concern is heightened in this case, because the dispute centered on Tyson's alleged "good faith" in its reaction to its Kronos Outage, contrasted against Plaintiffs' assertion that Tyson could not meet its burden to avoid liquidated damages. The case thus did not center on whether Tyson was liable for the unpaid or delayed wages in the first instance. The Settlement avoids this significant risk and provides substantial benefits to the collective members that opt-in—which include all eligible employees.

The settlement provides Plaintiffs and each putative collective member with a proportional recovery of liquidated damages for their delayed wages (in addition to the 100% of the delayed wages they have already been paid), without any differential treatment member or sub-collective. Each Plaintiff and collective member is allocated a settlement award based solely on the amount of their delayed wages. Without accounting for the forgiven

overpayments, the settlement provides new funds to Plaintiffs and the putative collective worth over 62% of their total potential FLSA liquidated damages—**after** accounting for the payment of the proposed attorneys' fees, expenses, service awards, and administration costs.[3] Once including the forgiveness of overpayments, the recovery accounts for approximately 85% of FLSA liquidated damages—again, **after** accounting for the payment of the proposed attorneys' fees, expenses, service awards, and administration costs. "[T]his is well over the range of percentage-based recoveries other courts have found acceptable." *Askar v. Health Providers Choice, Inc.*, No. 19-CV-06125-BLF, 2021 WL 4846955, at *4 (N.D. Cal. Oct. 18, 2021) (approving a wage-and-hour settlement in which common fund totaled 50% of potential damages, including attorneys' fees, expenses, and service awards, and 35% of the potential damages after attorneys' fees, expenses, and service awards); *Newell v. Ensign United States Drilling (California) Inc.*, No. 119CV01314NONEJLT, 2021 WL 6000227, at *13 (E.D. Cal. Dec. 20, 2021) (approving a wage-and-hour settlement in which common fund totaled 38% of potential damages, including attorneys' fees, expenses, and service awards); *Mondrian v. Trius Trucking, Inc.*, No. 119CV00884DADSKO, 2022 WL 2306963, at *15 (E.D. Cal. June 27, 2022) (approving a wage-and-hour settlement in which common fund totaled 16% of potential damages, including attorneys' fees, expenses, and service awards); *Ferrell v. Buckingham Prop. Mgmt.*, No. 119CV00332NONESAB, 2020 WL 4364647, at *2 (E.D. Cal. July 30, 2020) (approving a wage-and-hour settlement in which common fund totaled 5.3% of potential damages, including attorneys' fees, expenses, and service awards, and less than

---

[3] In light of the unique procedural posture of this case, in which Tyson paid back 100% of the unpaid or delayed wages at issue during the pendency of the case, the recovery of 62% of liquidated damages means that, as a result of the settlement, each Plaintiff and putative collective member will actually recover 162% of their unpaid or delayed wages, net of attorneys' fees, expenses, service awards, and administration costs.

3% of the potential damages after attorneys' fees, expenses, and service awards); *Singh v. Roadrunner Intermodal Servs., LLC*, No. 115CV01497DADBAM, 2018 WL 2412325, at *7 (E.D. Cal. May 29, 2018) (approving a wage-and-hour settlement in which common fund totaled less than 12% of potential damages (because categories of damages were excluded from computation), including attorneys' fees, expenses, and service awards), *modified*, No. 115CV01497DADBAM, 2018 WL 4382202 (E.D. Cal. Sept. 13, 2018); *Greko v. Diesel U.S.A., Inc.*, No. 10-CV-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (collecting cases and approving wage-and-hour settlement in which class received payments totaling 24% of maximum potential damages); *Glass v. UBS Fin. Servs., Inc.*, No. 06–cv–4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan.26, 2007) (approving settlement in which wage-and-hour class received payments totaling 25-35% of potential damages); *see also In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1042 (N.D. Cal. 2008) (approving shareholder class action settlement in which class payments totaling 6% of potential damages, after attorneys' fees and expenses).

Besides their potential FLSA claims, collective members will release claims under potentially applicable state laws.[4] The value of those claims has been factored into the settlement and the equal treatment of collective members. Given the relatively unique claims at bar—which relate only to liquidated damages, since the underlying wages have already been fully paid—Plaintiffs believe that valuing the claims of all putative collective members equally makes particular sense here. In all, the "differences in strength" between the requirements of the state laws and the amounts recoverable under state laws "are not so great as to make the outcome clear" and make it fair to treat Class Members' claims "more or less equally." *In re*

[4] The release of federal, state, and local claims is described in the proposed Notice.

*Cendant Corp. Litig.*, 264 F.3d 201, 250-51 (3d Cir. 2001). First, there are only four states with a sizable amount of employees that provide for state remedies that could potentially be greater than those available under the FLSA: Maryland, Maine, Ohio, and California. Second, each of these state's laws have bars to liquidated damages and penalties, such as showing a lack of good faith or willfulness, which add requirements for an affected employee to recovery.

**Maryland:** Under the Maryland Wage and Hour Law (MWHL), Md. Code Ann., Lab. & Empl. § 3-415, and the Maryland Wage Payment and Collection Law (MWPCL), Md. Code Ann., Lab. & Empl. § 3-501 *et seq.*, a plaintiff can potentially recover treble damages (three times their backwages), which would be potential recovery above the FLSA's liquidated damages (an additional amount equal to their backwages, for a total of two times damages). However, the MWPCL provides an employer with a defense to liquidated damages if it can show that wages were withheld as the result of a bona fide dispute. MWPCL, Md. Code Ann., Lab & Empl. § 3-507.2(b). A bona fide dispute may be found where the employer advances an objectively reasonable defense to the MWPCL claim. *Lopez v. Lawns 'R' Us*, No. CIV. DKC 07-2979, 2008 WL 2227353, at *4 (D. Md. May 23, 2008), *report and recommendation adopted sub nom. Lopez v. Lawns "R" Us*, No. CV DKC 2007-2979, 2008 WL 11509751 (D. Md. June 26, 2008). And in order to recover treble damages under the MWHL or MWPCL, the plaintiff must show consequential damages and foreseeability of those consequential damages. *Vanegas v. Diaz Granados, Inc.*, No. PWG-15-2298, 2017 WL 345855, at *5 (D. Md. Jan. 24, 2017); *Clancy v. Skyline Grill, LLC*, No. CIV. ELH-12-1598, 2012 WL 5409733, at *8 (D. Md. Nov. 5, 2012), *report and recommendation adopted*, No. CIV.A. ELH-12-1598, 2013 WL 625344 (D. Md. Feb. 19, 2013). In all, compared to the FLSA, these are relatively higher bars to recovery than

the FLSA that makes reasonable putative collective members' compromise on the basis of their potential FLSA damages.

**Maine**: Maine provides putative collective members with two potentially applicable laws, the Maine Wages and Medium of Payment Act (MWMPA) and the Maine Minimum Wage Law (MMWL). The MWMPA (which allows for treble damages) generally applies when an employee has not been paid at all for time worked, while the MMWL (which allows for only double damages) applies as to underpayments. *Giguere v. Port Res. Inc.*, 927 F.3d 43, 52 (1st Cir. 2019). Only one of these remedies will apply to a given violation. *Id.* Thus, Tyson could have argued an underpayment, rather than nonpayment, applied in the context of the specific violation at issue. *See id.* at 50 (referring to FLSA violations as "underpayments"). As such, putative collective members could have been limited to double damages anyway, the same as under the FLSA and would not add any additional value here.

**Ohio:** The Ohio Minimum Fair Wage Standards Act (OMFWSA), Ohio Rev. Code §§ 4111 *et seq.*, does not provide for liquidated damages for overtime violations. *Barnes v. Abraham, Inc.*, No. 2:17-CV-279, 2017 WL 5714091, at *3 (S.D. Ohio Nov. 28, 2017) (citing Ohio Rev. Code § 4111.10(A)). However, when wages are paid late for any reason, including violation of the FLSA, the OMFWSA, or other Ohio law, the Ohio Prompt Pay Act (OPPA), Ohio Rev. Code § 4113.15(B), allows recovery of 6% of the amount of the claim beyond specific time periods, or $200, whichever is greater. But to trigger these damages, the wages must not be in dispute. *Cobbs v. Iamar, LLC*, No. 2:21-CV-5075, 2022 WL 20475953, at *2 (S.D. Ohio Sept. 6, 2022). Thus, liability under the OPPA "rises and falls with the FLSA and Ohio Wage Act violations." *Id.* It is therefore reasonable for this issue to be compromised in the settlement context, particularly given that employers generally contest—as Tyson would

here—employees' entitlement to the disputed wages in the first place. *See*, *e.g.*, *id.* (analyzing the parties' settlement approvingly on this issue and denying settlement approval solely because parties sought to seal settlement agreement); *see also Smith v. Loc. Cantina, LLC*, No. 2:20-CV-03064, 2022 WL 1183325, at *2 (S.D. Ohio Apr. 19, 2022) (approving settlement recognizing compromise of Ohio law claims); *Est. of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 WL 1966062, at *4 (S.D. Ohio May 17, 2021) (same) ("(The parties do dispute, however, whether any of the allegedly unpaid wages in this case are 'not in contest or disputed.'"). Ohio Revised Code section 2307.60 imposes civil liability, including punitive damages, for criminal acts, which are defined to include willful violations of the FLSA. Like OPPA damages, however, because of the high bar to show willful violations,[5] this issue is often compromised in settlement. *See Smith*, 2022 WL 1183325, at *2; *Est. of McConnell*, 2021 WL 1966062, at *4. Importantly, Ohio workers can recover under only once, "even if entitlement to those wages arises under multiple laws." *Est. of McConnell*, 2021 WL 1966062, at *2. In all, the settlement provides ample reward for putative collective members in Ohio in light of the risks of proceeding under Ohio law.

**California:** The California Labor Code does not provide any remedies for delayed wages that are, in themselves, more favorable than the FLSA. However, California employees may have claims for waiting time, inaccurate wage statements, and unfair competition penalties. These claims are "derivative" of their wage claims. *Haralson v. United Airlines, Inc.*, 224 F.Supp.3d 928, 932 (N.D. Cal. 2016). The underlying liability would thus succeed or fail

---

[5] Notably, because Plaintiffs' FLSA violations were brought within two years, they would not have had to prove willfulness to recover under the FLSA, which requires willfulness only to extend the statute of limitations from two to three years.

along with the underlying claims. Besides their risk as derivative claims, they could have been lost on their own merits.

Waiting time penalties under California Labor Code § 203, for example, require a "willful" withholding of the employee's wages by the employer. Defendants could prevail on this issue by alleging a good faith dispute as to whether these workers were exempt or whether they were due overtime pay. *See Amoral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1201 (Cal.App. 1 Dist. 2008) ("A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee.").

The same risk is true for inaccurate wage statement claims under California Labor Code § 226(e)(1), which require for recovery that the employee show the employer "knowing an intentional failure" to provide accurate wage statements to affected employees. *See Hurst v. Buczek Enterps., LLC*, 870 F.Supp.2d 810, 829 (N.D. Cal. 2012) (Chen, J.) (precluding recovery for wage statement claim where employer made a "good faith claim" on the merits of its exemption defense). The "knowing and intentional failure" standard poses an additional barrier to recovery for these claims. *See id.* (dismissing wage statement claim while finding a fact issue on the merits).

Based on the investigation of these claims in this case, Plaintiffs did not assign significant value to derivative claims for the purpose of evaluating the settlement value in this instance. This considered position is not unreasonable, and it does not undermine the proposed settlement. "If the unconsidered claims are not particularly strong or valuable, such that they're not likely to have materially influenced the overall settlement, counsel's failure to consider the claims would not be a basis for rejecting the agreement." *Cotter v. Lyft, Inc.*, 193

F.Supp.3d at 1038. The derivative claims have been attributed no value "on the basis that there would be a substantial risk of no recovery on th[ose] claim[s]." *O'Connor*, 201 F.Supp.3d at 1128 (internal quotation omitted). If "there [a]re substantial risks as to the breaks claims, minimum wage and overtime claims, it [i]s therefore reasonable for Plaintiffs' counsel to assign no or little value to these claims when considering the overall full-verdict value." *Id.* at 1128-29. "That some Labor Code claims are not valued does not automatically invalidate the settlement reached" where the plaintiff "persuasively explains why the Labor Code claims … were not factored in his total exposure estimate." *Harvey v. Morgan Stanley Smith Barney, LLC*, No. 3:18-cv-02835-WHO, 2020 WL 1031801, at *6 (N.D. Cal. Mar. 3, 2020). Here, putative collective members would have faced significant challenges to any Labor Code claims, and it was not unreasonable for them and their counsel to value them accordingly when working to resolve this case.

With regard to the unfair competition claims, "'any business act or practice that violates the Labor Code through failure to pay wages is, by definition, an unfair business practice.'" *Maravilla v. Rosas Bros. Constr., Inc.*, 401 F.Supp.3d 886, 901 (N.D. Cal. 2019) (Tigar, J.) (quoting *Cortez v. Purolator Air Filtration Prod. Co.*, 999 P.2d 706 (Cal. 2000)). However, the remedies under the Unfair Competition Act are for restitution and injunctive relief, and they are cumulative to the other damages that would be alleged by putative collective members related to the violations. *Id.* (citing *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (Ex), 2016 WL 7486600, at *13 (C.D. Ca. Sept. 27, 2016)). In this case, Plaintiffs had available, and alleged on behalf of the putative collective members, claims under the FLSA covering all available claims through their statutes of limitations, and thus there is no

additional consideration necessary for putative collective members' potential unfair competition claims.

In addition to the new cash fund, under the Amended Settlement Agreement, Tyson agrees not to recoup overpayments made to collective members who join the lawsuit. Prior to the settlement, Plaintiffs contend Tyson had not made legal agreement not to seek these overpayments. Thus, Plaintiffs contend, Tyson legally could have sought recoupment of these overpayments.

The Kronos outage resulted in many employers' having "net" overpaid certain employees. Many of these employers began to (and continue to) recoup these overpayments. *E.g.*, FiercePharma, *Pfizer asks hourly staffers to return overpayments in aftermath of vendor's cyberattack: reports*, https://www.fiercepharma.com/pharma/pfizer-asks-staffers-return-overpayments-aftermath-timeclock-service-cyberattack (Apr. 1, 2022); WSOC-TV, *Workers overpaid during cyberattack told they have to pay employers back*, https://www.wsoctv.com/news/local/workers-overpaid-during-cyberattack-told-they-have-pay-employers-back/CLPISHDASNAKLL4IIHQ4CTZ6XY/ (May 31, 2022); The Oregonian, *Oregon hospital is asking its employees to repay $2 million mistakenly paid in wages*, https://www.oregonlive.com/business/2022/08/st-charles-hospital-asks-employees-to-repay-2-million-in-wages.html (Aug. 13, 2022). At least one employer has **successfully** argued that it may have the right to claw back overpayments resulting from the Kronos outage, because applicable federal law does not preempt state law regarding such overpayments. *Washington State Nurses Ass'n v. MultiCare Health Sys.*, 535 P.3d 480, 490 (Wash. Ct. App. 2023).

For example, many affected employees (and potential collective members) in this case worked in Ohio. Ohio law, under the theory of unjust enrichment, has a six-year statute of

limitations. Ohio Rev. C. § 2305.07(b). Thus, if Tyson relied on an unjust enrichment theory to seek recoupment of any alleged overpayment for Ohio employees, it could do so for at least another four years.

In all, the legally enforceable forgiveness within the settlement is of great value and would not exist absent the settlement. *Sorace v. Wells Fargo Bank, N.A.*, No. CV 20-4318, 2024 WL 643229, at *10 (E.D. Pa. Feb. 15, 2024) ("'Debt forgiveness provides a valuable award to class members,' and forgiveness need not be considered a 'nonmonetary award that 'deserves careful scrutiny to ensure that it has actual value to the class.'" (cleaned up) (quoting *Cosgrove v. Citizens Auto. Fin., Inc.*, No. 09-1095, 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011)). "Courts frequently include debt forgiveness in the value of settlements." *Id.*; *see also Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (holding that, while student loan forgiveness might not "have the same value as cash in hand," it was of value given student credit reports would be cleared of default); *Woodard v. Navient Sols., LLC*, No. 8:23CV301, 2024 WL 94468, at *8 (D. Neb. Jan. 9, 2024) ("The debt relief also has value in its broader impact on class members' credit reports and general financial wellbeing.").

Thus, while Plaintiffs' counsel's fees are comprised of 40% of the new settlement funds obtained for the collective, the fees amount to only 17% of the overall gross settlement amount achieved for the collective, which is the proper measure for examining the benefit to the class or collective. *In re Flint Water Cases*, 583 F.Supp.3d 911, 947 (E.D. Mich. 2022) ("The Sixth Circuit instructs that the value of the benefit to the class is based 'on the total relief class counsel makes available to all the class members.'" (quoting *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 278 (6th Cir. 2016) (emphasis removed)), *dismissed*, No. 22-1187, 2022 WL 18960956 (6th Cir. Sept. 14, 2022).

### 1.4. Factor 4: The settlement did not involve overreaching by the employer.

This factor ensures the employer does not overreach during the settlement negotiations. Here, the settlement was reached between highly qualified attorneys (on both sides) and with the assistance of one of the most respected wage and hour mediators in the country. *Johnson v. Himagine Sols., Inc.*, No. 4:20-cv-00574-SPM, 2021 WL 2634669, at *5 (E.D. Mo. June 25, 2021) ("[T]he Court finds no reason to believe there was any overreaching by the employee in the settlement negotiations, particularly in light of the experience of Plaintiffs' counsel in this area. Additionally, the fact that the parties reached this settlement after a mediation conference with an experienced wage and hour mediator suggests an absence of overreach."). As stated above, the Settlement was reached after the Parties and their counsel attended not one, but two full-day mediations with Mr. Clifford which were held about nine months apart and which were at two different stages of the case (pre- and post-conditional certification), and was then only settled after each Party independently evaluated and accepted Mr. Clifford's proposal after the final mediation. No such overreach occurred.

### 1.5. Factor 5: The settlement is the result of arm's length negotiations based on the merits of the case.

As explained above, the settlement is a product of the extended negotiations between the Parties, including arms-length negotiation of counsel and mediations with Mr. Clifford. Simply put, there was no fraud or collusion by any participant. Through motion practice before the Court on Plaintiffs' Motion for Conditional Certification and the exchange of time and pay data, along with information about Tyson's Kronos outage, and through settlement discussions both before and after certification, the Parties hotly debated legal and factual issues. *See* Ex. C, Parmet decl. The Parties also independently researched the legal issues,

particularly with regard to the combining of workweeks to reconcile employees' net pay at the end of the outage.

In all, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Thornton in particular) recognized that the settlement represented a compromise of the range and certainty of damages, and that this Settlement in the best interest of Plaintiffs and the putative collective. Ex. C, Parmet decl.

**2. Notice should issue to the proposed collective.**

As part of the Settlement Agreement, the Parties consent for notice of this case and the Settlement to issue to the following collective, pursuant to the FLSA, 29 U.S.C. 216(b):

> All current or former non-exempt employees of Tyson Foods, Inc. ("Tyson") (including its subsidiaries and alter egos) who worked in the United States at any time during Tyson's Kronos service outage, beginning on or about December 11, 2021, until the time that Tyson regained full access to all Kronos products and services, <u>and</u> resumed normal employee timekeeping and payroll operations.[6]

The proposed notice provides information in clear and concise terms on the lawsuit itself, the Settlement collective, the terms and conditions of the Settlement, the relief the Settlement will provide collective members that opt-in, and the procedure for opting into the Settlement by cashing the enclosed settlement check.

**3. Putative collective members will consents by signing checks, and their consents will be filed with the Court before dismissal.**

The Amended Settlement Agreement complies with the Court's directive during the past hearings that the putative collective members be allowed by opt-into this matter by

[6] This collective includes those individuals who worked at facilities jointly operated by the following related entities, which Tyson represents used Kronos systems: Advance Food Company LLC, AdvancePierre Foods, Inc., Allied Specialty Foods, Inc., Barber Foods, LLC, Cloverdale Farms, LLC, Cobb-Heritage, LLC, Keystone Foods, LLC, Original Philly Holdings, Inc., and The Hillshire Brands Company.

signing and negotiating checks that will accompany the opt-in notice. Each check, like the notice itself, will explain that the putative collective member will opt-into the case and be bound by the settlement upon signing and negotiating the check. Because the FLSA requires an individual's affirmative written consent, this method is frequently used in FLSA opt-in settlements like this one, instead of a two-step notice and payment procedure. *E.g.*, *Futrell*, No. 0:22-cv-00969-JRT-DJF, ECF No. 69; *Estevez*, No. 3:22-cv-00327, ECF No. 35; *Henderson*, No. 2:22-cv-00414, ECF No. 26; *see also*, *e.g.*, *Edelen v. Am. Residential Servs., LLC*, No. CIV.A. DKC 11-2744, 2013 WL 3816986, at *2 (D. Md. July 22, 2013) ("With respect to the FLSA claims, those members of the proposed collective class who sign or endorse their settlement checks from Defendants will be deemed to have agreed to (1) joining the FLSA collective action and (2) releasing their FLSA claims ...."); *Curtis v. Genesis Eng'g Sols., Inc.*, No. GJH-21-722, 2022 WL 1062024, at *9 (D. Md. Apr. 8, 2022) ("Only those who sign their settlement checks (and thus affirmatively opt in to the FLSA class under Section 216(b)) will release their FLSA claims. The Court finds that this opt-in procedure complies with Section 216(b)." (internal citation and quotation marks omitted)).

Further, the consents will be filed with the Court prior to the closure and dismissal of the case. This procedure satisfies the FLSA's two requirements that consent be (1) in writing and (2) filed with the court. *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 617 (S.D. Tex. 1979); *see also Manning v. Gold Belt Falcon, LLC*, 817 F.Supp.2d 451, 454 (D.N.J. 2011) ("The statute does not elaborate upon the form or timing of these two requirements.").

**4. The Court should allow reasonable service awards.**

The terms of the Settlement allow the named Plaintiff and two opt-ins who filed declarations in support of conditional certification to receive modest service awards to be paid

from the gross settlement amount for their roles in initiating the investigation and participating in litigation of this matter, including serving as claims representative, responding to counsel's questions, providing documents, reviewing data, participating in settlement discussions, reviewing the Settlement, and otherwise assisting counsel. These service awards amount to $5,000 for Thornton and $2,500 for each of Shanta Love and Jeanous West.

Courts routinely approve service awards to compensate representative plaintiffs for the services they provided and the risks they incurred during the course of class or collective action litigation. *See*, *e.g.*, *Caligiuri v. Symantec Corp.,* 855 F.3d 860, 868 (8th Cir. 2017) (upholding $10,000 service award to each named plaintiff in class action settlement); *Gray v. CJS Sols. Grp. LLC*, No. 19-1008 (PAM/DTS), 2021 WL 4151007, at *1 (D. Minn. Sep. 13, 2021) (approving $10,000 service award in FLSA case); *Murphy v. Ajinomoto Windsor*, No. l:15-cv-00120-JAR, 2018 WL 11312002, at *2 (E.D. Mo. Mar. 26, 2018) (approving $5,000 service award in FLSA case); *Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action); *Castillo v. Morales, Inc.*, No. 2:12-cv-00650, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (approving $8,000 service award to named plaintiff representative in wage-and-hour case); *McClean v. Health Sys.*, No. 6:11-cv-03037-DGK, 2015 WL 12513703, at *1 (W.D. Mo. Aug. 4, 2015) (approving $5,000 service award in FLSA case; *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 2512750, at *11 (D. Minn. June 29, 2012) ("The Settlement occurred before depositions were conducted of class representatives, and before they needed to testify at trial. Given the extent of the class representative' performance and assistance in procuring the Settlement, the Court finds that the proposed service award of $7,500 to the McGregors and

$5,000 per abode to the other class representatives is an appropriate service award."), *aff'd*, 716 F.3d 1057 (8th Cir. 2013); *Wineland v. Case's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action).

"Given [Plaintiffs'] active participation," a service award for each is reasonable. *Blackburn v. Conduent Com. Sols. LLC*, No. 1:19-CV-1229-RP, 2020 WL 9810023, at *3 (W.D. Tex. Dec. 22, 2020).

**5. Plaintiffs' attorneys' fees and litigation expenses are fair and reasonable, and they form part of the agreement between the Parties.**

A portion of the Settlement is allocated to the payment of Plaintiffs' attorneys' fees and case expenses. It is entirely appropriate for the issue of attorneys' fees to be settled by the Parties themselves. *See*, *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee.").

The attorney's fees provision of "the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act." 29 U.S.C. § 216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

Plaintiffs' attorneys' fees in this matter are calculated as a percentage-of-the-benefit or common fund, which "is appropriate as long as the fees are fair and reasonable." *Del Toro v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *3 (E.D. Mo. May 5, 2021). This method of fee calculation is "'well established'" in the Eighth Circuit. *In re Xcel*

*Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)). In reviewing the award, the Court may consider the following factors: (1) the amount involved and the results obtained; (2) whether the fee is fixed or contingent; (3) the novelty and difficulty of the questions; (4) the experience, reputation, and ability of the attorneys; and (5) awards in similar cases. *Id.* (citing *Keil v. Lopez*, 862 F.3d 685, 703 (8th Cir. 2017)).

Plaintiff requests the Court approve the attorneys' fees agreed upon under the settlement agreement as a percentage of the fund. Here, the Parties' agreement calls for, and Plaintiff requests, an attorneys' fee award of $820,000, which amounts to 17% of the gross settlement value of $4,823,701.62, far less than the norm for a common fund settlement of this size.[7] Prior to the settlement, Tyson may have had the right to recoup alleged overpayments in full. Thus, while Plaintiffs' counsel's fees are comprised of 40% of the new settlement funds obtained for the collective, the fees actually amount to only 17% of the overall gross settlement amount achieved for the collective, which is the proper measure for examining the benefit to the class or collective.[8] Further, under the Amended Settlement

---

[7] This amount represents 40% of the new cash portion of the settlement only.

[8] "When using the percentage-of-the-fund approach, courts compensate class counsel for their work in extracting non-cash relief from the defendant in a variety of ways. When the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund." *In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319391, at *13 (S.D. Fla. Aug. 5, 2013); *see also Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2012) (rejecting argument that value of injunctive relief should not also be considered in addition to cash for purposes of determining class counsel's fees); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("[W]here the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained ... courts [may] include such relief as part of the value of a common fund for purposes of applying the percentage method ...."); American Law Institute, Principles of the Law of Aggregate Litigation, § 3.13(b) (2010) ("[A] percentage of the fund

Agreement, 20% of Plaintiffs' counsel's fees will be withheld until the close of the settlement administration. In all, Plaintiffs' counsel's fees are fair and reasonable, and the procedures in place ensure Plaintiffs' counsel's active participation through the conclusion of this matter.

**5.1. Factor 1: The amount involved and the results obtained.**

A major advantage of the "percentage of recovery" method is that it considers the results that counsel actually obtained for the collective as opposed to the number of hours expended. *See Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983); *Brodziak v. Runyon,* 145 F.3d 194, 196 (4th Cir. 1998) ("the most critical factor in calculating a reasonable fee award is the degree of success obtained." (internal quotations omitted)).

One court, undertaking an analysis of reasonableness of requested attorneys' fees in a class action, considered the comparative data regarding Rule 23 class settlements summarized by the National Economic Research Associates (NERA). *Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D. Tex. 2000). The NERA Study relied upon by *Shaw* showed that the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in this case is much higher.

Under the settlement, collective members who were alleged to have been initially net underpaid or not timely paid will receive direct cash payments representing a substantial recovery on their alleged liquidated damages,[9] and if allegedly overpaid will still receive a small cash payment and will, in addition, be forgiven for any overpayments that Tyson may have had the right to recoup. Considering the risks of continued litigation, the results obtained

---

approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement").

[9] These liquidated damages are in addition to Plaintiffs' having already been fully paid any outstanding wages.

for the collective in this case were exemplary. In addition to receiving their full wages outside of this lawsuit, the settlement provides Plaintiffs and the putative collective with over 62% of their total potential liquidated damages under the FLSA on their best day in court—**after** payment of the proposed attorneys' fees, expenses, service awards, and administration costs, and **without** accounting for the forgiven overpayments. Because the settlement includes the forgiveness of 100% of overpayments across the entire payroll outage period, once including the forgiveness of overpayments, the recovery accounts for approximately 85% of their damages under the FLSA, again **after** payment of the proposed attorneys' fees, expenses, service awards, and administration costs.

Under Plaintiffs' theory of the case, Plaintiffs have prevailed in securing valuable compensation for their claims. They acquired a settlement that provides significant recovery for Plaintiffs and putative collective members. Meanwhile, under Tyson's theory, the putative collective members would be owed nothing.

The proper measure of the value of the settlement is generally the amount made available to the collective, even if the amount collected by participating collective members may be less. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) ("To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."); *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available,

whether claimed or not."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (per curiam) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund …."); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) ("The fact that there were a reduced number of claimants had no effect at all on the amount each class member received.…. Negotiating a $40 million gross settlement fund, therefore, created a benefit on behalf of the entire class.").

Thus, courts have concluded, "made available" analysis is appropriate **unless the settlement** sets up a settlement structure that is "contrived to **discourage claims**." *Gascho*, 822 F.3d at 287-88 (emphasis added). As the Sixth Circuit explained, "[t]his respects the Supreme Court's position, as well as our own, that making claims available to all class members provides them with a benefit." *Id.* at 286-87. For example, some settlements might require burdensome claims processing, extensive documentation, or confusing claims forms and websites. *Id.* at 288. Such circumstances might warrant valuing "potential relief as different from money in the plaintiff's pocket." *Id.*

Here, no such concerns exist. First, the list of potential collective members is easy to define and notify, since all of them worked for Tyson and did so relatively recently. Second, they will all be provided at least some cash (with some also receiving debt forgiveness), instead of coupons or other non-monetary relief. Third, the claims process is straightforward and easy. The only thing a potential collective member need do to participate is negotiate their check—there is no documentation or additional steps required. Fourth, none of the funds will revert to Tyson. They will be subject to two redistributions. The first will be made to

participating collective members, and the second will be provided to a cy pres recipient. But even cent of the settlement will be provided to a collective member or the cy pres recipient.

This means Plaintiffs' counsel has made readily available the relief to the entire potential collective. Thus, Plaintiffs' counsel have done their utmost to prioritize the direct benefit to the collectives. *See Gascho*, 822 F.3d at 284. If a collective member chooses not to participate, it simply cannot be said to be due to a claims process that discouraged claims. It is, in essence, no different than any other client (such as a personal injury client) who resolves their case and is provided a check (whether from the defendant or even from their own attorney's trust account), but who then elects not to cash the check.

Due to their work to make settlement funds readily available to the proposed collective, the correct measure for attorneys' fees here is the total value "made available" to the proposed collective.

In all, the parties' settlement provides an excellent recovery to all putative collective members, secured through the efforts of Plaintiffs' counsel.

**5.2. Factor 2: Contingent nature of fees.**

Plaintiffs' counsel undertook this representation on a purely contingent basis. Plaintiffs' counsel thus took on the risk that accompanies contingent-fee representation that the investment of substantial attorney time and resources would be lost, including the prospect of dispositive motions or unfavorable outcomes late in discovery, or even at trial or on appeal. Plaintiffs' counsel thereby "cast their fate with the class members." *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 WL 5547159, at *3 (N.D. Iowa Nov. 9, 2011). Plaintiffs' counsel should be compensated for the "high risk of loss" that this case would "produce no fee." *See*, *e.g.*, *Brissette v. Heckler*, 784 F.2d 864, 866 (8th Cir. 1986). "There

is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

Had this case not settled, Plaintiffs' counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Tyson could have succeeded. Therefore, Plaintiffs' counsel was at great risk for non-payment for all work performed.

This factor thus favors approval of the requested fees.

**5.3. Factor 3: Complexity of the litigation**

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (internal citation omitted); *see also Johnson v. Himagine Sols., Inc.*, No. 4:20-cv-00574-SPM, 2021 WL 2634669, at *7 (E.D. Mo. June 25, 2021) ("The [FLSA] case appears to involve complex factual issues, and Plaintiffs' counsel has provided evidence that counsel engage in extensive investigation, legal research and analysis of difficult legal questions and theories…."); *Brown v. Reddy ICE Corp.*, No. 4:14-cv-1786-RLW, 2016 WL 2930933, at *4 (E.D. Mo. May 19, 2016) ("[T]he instant case … involved undecided and complex questions of law and fact under the FLSA."). Had the case not settled, the parties faced complex motion practice, both over the merits, as well as on procedural matters, such as collective treatment. *McClean v. Health Sys., Inc.*, No. 6:11-cv-03037-DGK, 2015 WL 12426091, at *7 (W.D. Mo. June 1, 2015) (observing, in approving FLSA settlement, that "legal issues that still remain to be addressed at both the decertification and summary judgment stages are quite complex").

In all, this was a complex FLSA case involving unique questions under the FLSA, which weighs in favor of the approval of fees.

**5.4. Factor 4: Experience, reputation, and ability of the attorneys.**

Plaintiff already discussed, at length, their counsel's experience, reputation, and ability—both with respect to wage-and-hour cases generally and with respect to Kronos outage cases in particular. *See infra* § D(1.2). In all, this case "presented particular complexities … Nevertheless, through their extremely skilled and efficient efforts, Class Counsel marshaled sufficient evidence and achieved settlements that were highly favorable to the class members—all within a year and a half o the original case filing." *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 WL 5547159, at *3 (N.D. Iowa Nov. 9, 2011).

**5.5. Factor 5: Awards in similar cases.**

Plaintiffs' attorneys' fees in this case are well within precedent in the Eighth Circuit, and, in fact, are on the low end of that range. *Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) ("[C]ourts [in the Eighth Circuit] have frequently awarded attorneys' fees ranging up to 36% in class actions."). In common fund cases such as this, including FLSA cases, district courts have approved fees ranging up to 40% of the collective's gross recovery. *See*, *e.g.*, *Allshouse v. The Joshua Agency, LLC*, No. 1:21-CV-1032, 2023 WL 6166474, at *3 (W.D. Ark. Sept. 21, 2023) (40%); *Del Toro v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *3 (E.D. Mo. May 5, 2021) (35%); *King v. Raineri Const., LLC*, No. 4:14-CV-1828 (CEJ), 2015 WL 631253, at *4 (E.D. Mo. Feb. 12, 2015) (34%); *Salome v. Cushman & Wakefield U.S. Inc.*, No. 4:21-cv-01151-RWS, ECF No. 110, at *6 (E.D. Mo. Feb. 9, 2023) (approving attorneys' fees of 1/3 in wage-and-hour case); *Johnson v. Himagine Solutions, Inc.*, No. 4:20-CV-00574-SPM, 2021 WL 2634669, at *7 (E.D. Mo. June 25, 2021) (same); *Tanner v. Empire*

*Financing, Co.*, No. 4:19-cv-0825-SEP, 2020 WL 7316115, at *2 (E.D. Mo. Dec. 11, 2020) (same); *Meller v. Bank of the West*, No. 3:18-cv-00033-JAJ-SBJ, 2018 WL 5305562, at *9 (S.D. Iowa Sept.10, 2018) (same), *report and recommendation adopted*, 2018 WL 5305556 (S.D. Iowa Oct. 1, 2018); *see also Browne v. P.A.M. Transport, Inc.*, No. 5:16-cv-05366-TLB, ECF No. 300 (W.D. Ark. Jun. 31, 2020) (Brooks, J.) (awarding fees of 1/3 of $16.5m recovery (for a total fee award of $5.5m) in wage-and-hour class and collective action).[10]

[10] Courts outside of this Circuit are in accord. *Salinas v. U.S. Xpress Enterprises, Inc.*, No. 113CV00245TRMSKL, 2018 WL 1477127, at *11 (E.D. Tenn. Mar. 8, 2018) (approving fees of 40% of the common fund in FLSA collective action settlement), *report and recommendation adopted*, No. 1:13-CV-245, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018); *Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855, at *1 (S.D. Ohio Nov. 8, 2018) (same); *Legros v. Mud Control Equip., Co.,* No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (same); *Matthews v. Priority Energy Servs., LLC*, 2018 WL 1939327, at *1 (W.D. Tex. April 20, 2018) (same); *Wolfe v. Anchor Drilling Fluids USA Inc.*, No. 4:15-cv-1344, 2015 WL 12778393, at *3 (S.D. Tex. Dec. 7, 2015) (same); *Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2008 WL 9410399, at *10 (S.D. Tex. May 7, 2008) (same); *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *9 (D. Kan. Jan. 3, 2017) ("Historically, our court has approved fee awards in FLSA cases ranging from four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars." (internal quotation omitted)); *Sarabia v. Spitzer Indus., Inc.*, 4:17-cv-2092, 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018) (recognizing that a 40% contingency fee in an FLSA case was "in line with that approved in other FLSA cases"); *Mabry v. Hildebrandt*, No. 14-cv-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015) (approving 40% contingency fee in FLSA action and finding that, "[i]n this Circuit, the percentage of recovery award in FLSA common fund cases ranges from roughly 20 to 45%"); *Enegren v. KC Lodge Ventures LLC*, No. 17-2285-DDC-GEB, 2019 WL 5102177, at *12 (D. Kan. Oct. 11, 2019) ("The court agrees that a 40 percent fee is fair and reasonable in [FLSA collective action] context."); *Daniels v. Prod. Mgmt. Indus., LLC*, No. 6:15-cv-02567, 2018 WL 1954352, at *4 (W.D. La. Apr. 20, 2018) (acknowledging that "contingency fee arrangements in this legal community are generally in excess of 33%" and finding 40% of the gross settlement amount for attorneys' fees and costs as "fair and reasonable" in FLSA collective action); *Heffernan Bryant v. Un. Furniture Indus., Inc.*, 1:13-cv-246-SA-DAS, 2017 WL 639320, at *5 (N.D. Miss. Feb. 16, 2017) (approving a request for 40% in fees in FLSA collective action while acknowledging that attorneys' fees in percentage of the fund common fund class cases "commonly fall between a lower 20% and an upper end of 50%"); *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905 (MF), 09-1248 (MF), 09-4587 (MF), 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011) ("In common fund cases, fee awards generally range anywhere from nineteen percent to forty-five percent of the settlement fund."); *Lyons v. Gerhard's Inc.,* No. 14-06693, 2015 WL 4378514, at *1 (E.D. Pa. 2015)

Courts have also approved of similar percentage-of-the-fund approaches when examining the same general fee structure proposed by Plaintiffs here, where fees are determined as a percentage of the new money not inclusive of the debt forgiveness to class and collective members. *E.g. Futrell v. Cargill, Inc.*, No. 0:22-cv-00969-JRT-DJF, ECF No. 69 (D. Minn. Dec. 6, 2023) (awarding 40% of new cash to collective, which was 4.6% of common fund); *Marshall v. Coca-Cola Consolidated Inc.*, No. 3:22-cv-00214-RJC-SCR, ECF No. 27 (W.D.N.C. Oct. 18, 2023) (awarding 40% of new cash to class and collective, which was 18.69% of common fund); *Estevez v. Change Healthcare, Inc.*, No. 3:22-cv-00327, ECF No. 35 (M.D. Tenn. Jun 13, 2023) (awarding 40% of new cash to collective, which was 35.5% of common fund); *Woodruff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) (awarding 40% of new cash to collective, which was 19.66% of common fund); *Sanchez v. Stonegate Senior Living, LLC*, No. 3:22-cv-00864-E, ECF No. 21 (N.D. Tex. Feb. 14, 2023) (awarding 40% of new cash to collective, which was 23% of common fund).

Moreover, Plaintiffs' agreement with counsel allowed Plaintiffs' counsel to seek a 40% contingency in the amount of **all monetary value** obtained by way of the claims. Ex. C, Parmet decl. "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (citations omitted); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *5 n.1 (N.D. Ohio Mar. 26, 2019) (same). Yet Plaintiffs' counsel's request for fees voluntarily limits that request to the new settlement fund, reducing the fees they would be entitled to seek to only new money obtained and not the monetary

---

(approving 44% as fees in FLSA common fund because although "on the higher side, but it is not so high as to be unreasonable").

value released by Tyson. That voluntary reduction from what counsel would be entitled to is evidence of the reasonableness of the fee. *See*, *e.g.*, *Coach, Inc. v. Goodfellow*, No. 2:10-cv-02410-V, 2012 WL 12868277, at *3 (W.D. Tenn. May 22, 2012) ("[T]he fee seems reasonable considering that Coach states that the fees requested in this motion are less than the amount that their counsel would receive under the parties' contingency agreement.").

The fees here are thus well within a reasonable range and should be approved.

**6. A lodestar cross-check confirms the fee award.**

A contingency award **may** be examined by performing a lodestar cross-check of the fee award. *Keil v. Lopez*, 862 F.3d 685, 691 (8th Cir. 2017). However, the cross-check is "not required." *Id.*

This matter was resolved only after litigation was substantially underway, including pre-certification written discovery, Thornton's successful motion for conditional certification, and two full-day mediations (conducted over nine months apart at different stages of the case). Still, Plaintiffs' counsel was able to efficiently resolve this case before additional discovery and depositions by working with Plaintiffs, defense counsel, and the mediator after initial discovery and the Court's conditional certification order, including by exchanging complex damage models and legal authorities, rather than prolonging the litigation and increasing the potential fees. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 WL 5547159, at *3 (N.D. Iowa Nov. 9, 2011). This efficiency should be not be held against Plaintiffs' counsel:

> This is the type of complex litigation that easily could have dragged on for several more years. Instead, it had a relatively short stay of two and a half years on this court's docket because counsel litigated the case efficiently and inexpensively. The lodestar of plaintiffs' counsel could easily have been much higher had not counsel cooperated with one another through the litigation and settlement process. Instead, all plaintiffs' counsel presented a modest lodestar

> because they moved the case along efficiently to a just result in a remarkably short period of time.

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d at 992. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (4th) § 14.121. Nonetheless, Plaintiffs' total lodestar fees are within a reasonable multiplier of the total fees sought. Ex. C, Parmet decl.

"Generally, to determine whether an hourly rate is reasonable, courts look at the rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Wiley v. Portfolio Recovery Assocs., LLC*, 594 F. Supp. 3d 1127, 1145 (D. Minn. 2022), *appeal dismissed sub nom. Yang v. Portfolio Recovery Assocs., LLC*, No. 22-1901, 2022 WL 19730597 (8th Cir. May 6, 2022) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[T]he district court may consider … factors, such as the attorney's regular hourly rates, skill or representation, difficulty of work performed, and counsel's experience and reputation." *Sherman v. Kasotakis*, 314 F. Supp. 2d 843, 882 (N.D. Iowa 2004). The party seeking fees should submit evidence to support the rates, which may include declarations and curricula vitae. *See Wiley*, 594 F.Supp.3d at 1145.

As the Court observed during the prior hearing, the Court has previously awarded attorneys' fees in FLSA matters at $300 per hour. *Holcombe v. Midwest Outdoor Concepts, LLC*, No. 5:22-CV-5161, 2023 WL 3077856, at *2 (W.D. Ark. Apr. 25, 2023); *Hill-Smith v. Silver Dollar Cabaret, Inc.*, No. 5:20-CV-5051, 2020 WL 4741917, at *4 (W.D. Ark. Aug. 14, 2020); *Murdock v. McNair*, No. 5:17-CV-05225, 2018 WL 6314569, at *2 (W.D. Ark. Dec. 3, 2018). Notably, however, each of these decisions reflects a contested fee petition in which the

plaintiffs recovered $7,344 (in *Hill-Smith*) and $16,215.17 (in *Murdock*).[11] In addition, each involved the same attorneys, who frequently file similar cases in Arkansas federal courts.[12] Adjusted for inflation,[13] the $300 per hour awarded in those cases would range from $311.81 to $376.50 today. District Courts in the Eastern and Western Districts of Arkansas have awarded attorneys' fees to plaintiff's counsel from other law firms at a similar $318.75 per hour in another single-plaintiff FLSA case with a total plaintiff recovery of $4,500 in September 2021. *Wright v. Tyler Techs., Inc.*, No. 4:20-CV-00454 KGB, 2021 WL 4255287, at *5 (E.D. Ark. Sept. 17, 2021). Adjusted for inflation, that award would be $366.38 today.

Federal courts in districts like this one, which are outside of the high cost of living index regions of the Northeast and Pacific, have recognized hourly rates in FLSA cases ranging up from $500 to $600 per hour for "top counsel." *Monroe v. FTS USA, LLC*, No. 208CV02100JTFCGC, 2020 WL 13227389, at *8 (W.D. Tenn. Oct. 13, 2020) (approving $500 to $600 for "Plaintiffs' top counsel" and observing that defendants' counsel charged $800 per hour for "several" attorneys and "$1,000 and $1,330 an hour for work done by four different

---

[11] While all of these results may be admirable, particularly given their nature as single plaintiff or non-collective cases, the results are simply leagues apart from the settlement in this case. The plaintiff's portion of the settlement in *Holcombe* was not readily apparent. However, it appears to be a single-plaintiff settlement as well.

[12] The various billing practices and fee issues regarding the law firm have been discussed by this Court, and are largely beyond the scope of this motion. *See*, *e.g.*, *Hill-Smith*, 2020 WL 4741917, at *2. What is critical, however, is that the firm's usefulness as a benchmark for reasonable hourly rates is highly limited, given the issues documented by this and other courts, in comparison to the skill, reputation, experience, and results achieved by Plaintiffs' counsel in this case.

[13] Inflation adjustments throughout this Motion are made using the Bureau of Labor Statistics' CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm.

attorneys"), *aff'd*, 17 F.4th 664 (6th Cir. 2021).[14] Adjusted for inflation, these awards would range from $605.44 to $726.35 today. Courts in even smaller markets have awarded similar hourly rates. For example, as part of a wage-and-hour settlement in the Western District of Oklahoma,[15] attorneys admitted between 2006 and 2008 were awarded hourly rates ranging from $350 to $475 back in 2011. *Lewis v. The GEO Gp., Inc.*, No. 5:08-cv-00881-M, ECF No. 246 (W.D. Okla. Jun. 14, 2011). Adjusted for inflation, these awards would range from $488.90 to $663.51 today.

Also in the Western District of Oklahoma, Plaintiffs' counsel, Matthew Parmet, was awarded fees at $395 per hour in *Keddy v. OneFlow Energy Servs., LLC*, No. 5:17-cv-00142-C, ECF No. 20 (W.D. Okla. Jan. 9, 2018). Adjusted for inflation, this would be $502.46 today. Mr. Parmet was awarded the same amount in another comparable district, the Western District of Pennsylvania, in 2017, in *Andrews v. Pacific Process Systems., Inc.*, No. 2:16-cv-01135-CB, ECF No. 49 (W.D. Pa. Nov. 30, 2017), which would be adjusted to $504.90 today. This amount is consistent with the rate normally charged by Mr. Parmet for hourly work, which is no less than $450 per hour regardless of the location where a matter is pending (although Mr. Parmet's firm is based in Houston) and whose regular hourly rate does not account for the contingency nature of the fee awards in *Keddy* or *Andrews*. In all, an hourly rate of $400 for Mr. Parmet is eminently reasonable in this District for this case, if not below value.

[14] Neither this District, nor the Western District of Tennessee include any Locality Pay Areas, as defined by the Office of Personnel Management (OMP). OMP, 2023 Locality Pay Area Definitions, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2024/locality-pay-area-definitions/ (last accessed Oct. 23, 2024).

[15] The Western District of Oklahoma likewise does not comprise a Locality Pay Area. *Id.*

In addition to Mr. Parmet, Parmet PC associate attorney Sammy Homsi also performed work on this case.[16] Mr. Homsi was a second-year attorney, and his work was billed by the Firm at the rate of $200 per hour. Earlier this year, a court in this District awarded hourly rates of $250 to several third-year associates. *See K7 Design Gp., Inc. v. Walmart, Inc.*, No. 5:21-CV-5069-CDC, 2024 WL 756284, at *3 (W.D. Ark. Feb. 2, 2024) (Comstock, Mag.J.). This was an upward adjustment, since the attorneys had represented their actual billing rates were, in fact, $215 per hour. *K7 Design Gp., Inc. v. Walmart, Inc.*, No. 5:21-CV-5069-CDC, ECF No. 203, at *6 (W.D. Ark. Aug. 3, 2023). For these reasons, an hourly rate of $200 is reasonable for Mr. Homsi in this case.

Regarding a reasonable hourly rate for Morgan & Morgan attorneys, C. Ryan Morgan, was awarded fees at the rate of $600 per hour in *Hightower v. Waste Pro of Florida, Inc.*, No. 4:22-cv-00076-MW-MAF, ECF No. 39, at *11 n.8 (N.D. Fla. Sept. 23, 2022). The Northern District of Florida does not contain any Locality Pay Area, but adjusted for inflation, this amount would be $637.38 today. Andrew Frisch was awarded an hourly rate of $395 per hour in a Jacksonville arbitration case last year. *Agbondinmwin v. The CSI Companies, Inc.*, No. 02-22-0001-36755, at *13 (AAA Jul. 17, 2023). The Middle District of Florida does not contain any Locality Pay Area, but adjusted for inflation, this would be equivalent to $407.42. In August of this year, Mr. Frisch was awarded an hourly rate of $650 per hour in a series of arbitrations in Puerto Rico. *Yeager v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5595, at *14 (AAA, Aug. 12, 2024); *Tyndall v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5597, at *14 (AAA, Aug. 12, 2024); *Yeager v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5601, at *14

[16] Mr. Homsi did not enter an appearance. However, an attorney need not enter an appearance to claim time worked on a matter. *E.g.*, *Animal Legal Def. Fund, Inc. v. Perdue*, 292 F. Supp. 3d 315, 319 (D.D.C. 2018) (collecting cases).

(AAA, Aug. 12, 2024). Puerto Rico does not contain any Locality Pay Area. For these reasons, and to use a universal rate for all attorneys, an hourly rate of $400 per hour for each of Mr. Frisch and Mr. Morgan is reasonable, if not below value.[17]

Given that Plaintiffs are seeking an award as a percentage of the common fund, Plaintiffs are not proposing to settle the issue of what hourly rate should be used for any particular attorneys or in any particular type of case. Plaintiff presents this information, rather, to demonstrate their proposed attorneys' fees for the purpose of evaluating the proposed attorneys' fees are well in line with a reasonable rate in for this purpose. Plaintiffs' counsel estimates that, to date, a total of at least 467 hours have been devoted by the attorneys working on this case. Ex. C, Parmet decl.; Ex. D, Frisch decl. Under Plaintiffs' counsel's estimates, using a rate of $400 per hour for Mr. Parmet, Mr. Morgan, and Mr. Frisch, and $200 per hour for Mr. Homsi, this equates to a total current lodestar of $165,550, to date.

Critically, even after approval, Plaintiffs' counsel's time in this matter will continue to increase. Plaintiffs' counsel will spend additional time fulfilling Plaintiffs' obligations under the settlement agreement, administering the settlement, and responding to Plaintiffs', Opt-in Plaintiffs, and putative collective members' inquiries. These efforts may easily match or surpass the time Plaintiffs' counsel has already devoted to this matter. Using the same hourly rates, at a reasonable estimate total hours of a minimum of 527 hours after administration, Plaintiffs' counsel's lodestar would be at $183,050. *E.g.*, *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *14 (E.D.N.Y. Apr. 11, 2016) ("In determining a reasonable attorneys' fee award, courts are mindful of the fact that the lodestar multiplier will

---

[17] Plaintiffs' counsel has lowered Mr. Morgan and Mr. Frisch's proposed hourly rates from $500, which accounts for the decreased lodestar total and slightly increased ratio, below.

diminish when counsel is required to perform additional work in administering a finalized settlement.") (collecting cases). In all, Plaintiffs' counsel's current lodestar has a **4.95 multiplier**, which is already within the range of reasonableness and will continue to decrease as this case moves to completion (to a **4.48 multiplier** based on Plaintiffs' counsel's estimates above). *In re Rite Aid Corp. Secs. Litig.*, 362 F.Supp.2d 587, 589 (E.D. Pa. 2005) (6.96 multiplier); *In re RJR Nabisco*, 1992 WL 210138, at *5-6 (S.D.N.Y. Aug.24, 1992) (6 multiplier); *Cosgrove v. Sullivan*, 759 F.Supp. 166, 167 n.1 (S.D.N.Y. 1991) (8.74 multiplier); *Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (6 multiplier); *Roberts v. Texaco*, Inc., 979 F.Supp. 185, 200 (S.D.N.Y. 1997) (5.5 multiplier); *In re Charter Communications, Inc., Sec. Litig.*, No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (5.61 multiplier); *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134-35 (D.N.J. 2002) (4.3 multiplier ); *In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999) (5.28 multiplier ), *vacated and remanded*, 243 F.3d 722 (3d Cir.2001), *on remand*, No. 98–2819 (D.N.J. June 11, 2002); *Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H–99–4137, Civ.A.H–99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Merkner v. AK Steel*, No. 1:09–CV–423–TSB (S.D. Ohio Jan. 10, 2011) (5.3 multiplier); *see also Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019) ("[W]hile the 5.3 lodestar multiplier is high, it does not exceed the bounds of reasonableness.").[18]

Plaintiffs' lodestar calculation also shows billing judgment writing off unproductive, excessive, or redundant hours. *Walker v. U.S. Dept. of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th

[18] Even if the hourly rates for Mr. Parmet, Mr. Morgan, and Mr. Frisch were lowered to $300 per hour, the resulting lodestar multiplier would still be under less than many other settlements. Such a rate would yield lodestar totals of $141,900 to date, and $156,900 after administration, which results in multipliers of 5.78 and 5.23, respectively.

Cir. 1996). "Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but hours written off." *See Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990), *vacated in part on other grounds*, 903 F.2d 352 (5th Cir. 1990). In this case, the lodestar shows billing judgment by utilizing decreased hourly rates, and also by excluding any time spent by paralegals, attorneys, and staff members on Plaintiffs' counsel's team other than Mr. Parmet, Mr. Homsi, Mr. Morgan, and Mr. Frisch.

In all, Plaintiffs' counsel's lodestar is well within an acceptable range based on a cross-check—particularly when accounting for Plaintiffs' counsel's reasonable hourly rates and excluded time based on Plaintiffs' counsel's billing judgment.

**7. Plaintiffs' counsel is entitled to recover reasonable costs and expenses.**

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). "Section 216(b) of the FLSA has been interpreted to include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Toliver v. Jbs Plainwell, Inc.*, No. 1:11-cv-302, 2015 WL 11255451, at *10 (W.D. Mich. Aug. 20, 2015) (internal quotation omitted), *report and recommendation adopted as modified*, No. 1:11-CV-302, 2016 WL 165031 (W.D. Mich. Jan. 14, 2016).

Plaintiff's counsel seeks reimbursement of the following litigation expenses, which were reasonable and necessary for prosecuting this case:[19]

| Cost | Amount |
| --- | --- |
| Court Fees | $ 402.00 |
| Service | $ 95.00 |
| Copies | $ - |
| Postage | $ 52.20 |
| Mediation | $ 6,000.00 |
| Admission/PHV Fees | $ 200.00 |
| Travel and Incidental | $ - |
| Legal Research | $ 1,127.83 |
| Certificates of Good Standing | $ 20.00 |
| **TOTAL** | **$ 7,897.03** |

## E. CONCLUSION

For these reasons, the Court should approve the Amended Settlement Agreement reached by the Parties.

Respectfully submitted,

***/s/ Matthew S. Parmet***
By: ______________________________

**Matthew S. Parmet**
TX Bar # 24069719
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5228
matt@parmet.law

**Andrew R. Frisch, Esq.**
FL Bar # 027777
(*admitted pro hac vice*)
**MORGAN & MORGAN, P.A.**
8151 Peters Road, 4th Floor

[19] Any authorized but unrealized expenses will be left in the settlement fund for distribution to the collective.

Plantation, Florida 33324
Telephone: (954) 327-5355
Facsimile: (954) 327-3013
Email: afrisch@forthepeople.com

**C. Ryan Morgan, Esq.**
FL Bar # 0015527
(*admitted pro hac vice*)
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Email: rmorgan@forthepeople.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF CONFERENCE

Prior to filing this motion, I conferred with Defendant's counsel, who confirmed Defendant is unopposed to the relief sought herein.

***/s/ Matthew S. Parmet***
______________________________
Matthew S. Parmet