**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | |
|---|---|
| ANNIE THORNTON, individually and on behalf of all others similarly situated,<br><br>v.<br><br>TYSON FOODS, INC. | **Case No. 5:22-cv-05077-TLB**<br>FLSA Collective Action<br><br>Judge Timothy L. Brooks |

# AMENDED SETTLEMENT AGREEMENT AND RELEASE

This Amended Settlement Agreement and Release (the "**Settlement Agreement**") is entered into by and between Plaintiff Annie Thornton ("**Plaintiff**"), on behalf of herself, and on behalf of all members of the Putative FLSA Collective (as that term is defined herein) and Tyson Foods, Inc., including its past, present, and future parent companies, subsidiaries (direct and indirect), predecessors, successors, affiliates, divisions, officers, directors, members, shareholders, assigns, employees, and legal representatives (collectively "Tyson") (together, Plaintiff, the Putative FLSA Collective and Tyson are the "**Parties**"), pertaining to the alleged failure of Tyson during the time period December 11, 2021 to January 15, 2022, to timely and accurately pay certain non-exempt employees due to the Ultimate Kronos Group ("**Kronos**") experiencing a cybersecurity incident with respect to Kronos Private Cloud, which Tyson used for certain timekeeping functions for certain non-exempt employees of Tyson and various corporate entities related to Tyson (the "**Kronos Outage**").

WHEREAS, on April 22, 2022, Plaintiff commenced litigation under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*., in the U.S. District Court for the Western District of Arkansas (the "**Court**") in the above captioned matter (the "**Lawsuit**"), on behalf of herself, and on behalf of all current or former non-exempt employees of Tyson who worked in the United States at any time during Tyson's Kronos Outage;

WHEREAS, the Parties attempted to resolve the claims on a global basis and retained mediator Dennis Clifford, Esq. to assist in that effort. After the provision of data and other information from Tyson, and upon investigation by Plaintiff of the claims in the Lawsuit, on January 9, 2023, and October 25, 2023, the Parties participated in two day-long mediation sessions facilitated by Mr. Clifford, during which the Parties discussed the claims and defenses relating to the Lawsuit. Subsequent to the second mediation, the Parties considered a mediator's proposal submitted by Mr. Clifford, which was ultimately accepted by both Parties;

WHEREAS, the Parties have made a thorough and independent investigation of the facts and law relating to the allegations in the Lawsuit. In entering into this Settlement Agreement, the Parties have considered: (a) the facts developed during an informal confidential exchange of information and the law applicable thereto; (b) the facts and law developed during motion practice on Plaintiff's Motion for Conditional Certification; (c) the facts developed during discovery in this Lawsuit; (d) the attendant risks of continued litigation and the uncertainty of the outcome of the

Ex. A



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

claims alleged; and (e) the desirability of consummating this settlement according to the terms of this Settlement Agreement. The Parties have each concluded that the terms of this Settlement Agreement are fair, reasonable, and adequate, and that it is in their best interests to settle the Lawsuit pursuant to the terms set forth herein; and

WHEREAS, in order to avoid the expense and burdens of further litigation, the Parties on behalf of themselves and for the benefit of all Releasees (as defined below) desire to resolve any and all suits, actions, causes of action, claims, or demands based on putative violations of the FLSA as well as putative violations of any state or local law related or pertaining to Tyson's alleged failure to accurately pay employees for all hours worked and all claims under the FLSA and any state or local law for the time period December 11, 2021 through January 15, 2022, relating to or arising out of Tyson's Kronos Outage, including, without limitation, all state, local, and federal claims for unpaid wages (whether minimum wage or overtime), failure to timely pay wages, failure to record hours worked, paystub and/or wage statement requirements, regular rate claims, reimbursement, and all related claims for statutory damages or penalties, interest, liquidated damages, attorneys' fees, costs, expenses, and all other such amounts, and including, without limitation, all claims that have been asserted in the Lawsuit or that could have been asserted in the Lawsuit nationwide.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises hereinafter set forth, the Parties agree as follows:

## DEFINITIONS

**1. Definitions**. The following terms used in this Settlement Agreement shall have the meanings ascribed to them below:

a. "Putative FLSA Collective" means all non-exempt employees, regardless of exact job, position held, or title, employed by Tyson in the United States from December 11, 2021 – January 15, 2022, who were employed in a job position that used (or would have used but for the Kronos Outage), Kronos Private Cloud to track their hours worked. Each such individual shall be a "Putative FLSA Collective member."

b. "Release Period" means December 11, 2021, through and including January 15, 2022.

c. "FLSA Collective" means those Putative FLSA Collective members who have participated in this settlement by timely cashing, depositing, or otherwise negotiating their Settlement Check.

d. "Releasees" means Tyson Foods, Inc. and each of its past, present, and future parent companies, subsidiaries (direct and indirect), predecessors, successors, affiliates, and divisions, as well as each of their and each of Tyson's agents; managers; owners; employees; members; officers; directors; partners; investors; legal representatives; accountants; trustees; executors; administrators; real or alleged alter egos; predecessors; successors; transferees; assigns; attorneys; and insurers.



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

e. "Plaintiff's Counsel" or "Collective Counsel" means PARMET PC and MORGAN & MORGAN, P.A.

f. "Tyson's Counsel" means Akerman LLP.

g. "Settlement Administrator" refers to the third-party settlement administrator, to be mutually agreed upon by the Parties, which will be retained to perform at least the following duties: (i) mailing notice, settlement checks, and applicable tax forms to Putative FLSA Collective members; (ii) processing Claims Forms and notifying the Parties of FLSA Collective Members who join this settlement; and (iii) calculating individual settlement awards, including any appropriate withholdings.

h. "Service Award Payments" means the payments described in Section 11.

i. "New Settlement Fund Amount." The New Settlement Fund Amount is a maximum of $2,050,000.00 inclusive of payment for: (a) all FLSA Collective members; (b) the Service Award Payments; (c) all attorneys' fees, costs, and litigation expenses approved by the Court; and (d) all costs and fees owed to the Settlement Administrator incurred in the administration of this settlement.

j. "Collective Settlement Amount." The amount remaining from the New Settlement Fund Amount after the following amounts have been deducted: (i) amount approved by the Court and Affirmed by the Court for the Service Award Payments; (ii) the amount approved by the Court and Affirmed by the Court for the FLSA Collective's attorneys' fees, expenses, and costs; and (iii) the amount owed for Settlement Administration costs to the Settlement Administrator for performing any duties necessary to administer the settlement ("Administration Costs").

k. "Collective Groups." The following are the Collective Groups that comprise the Putative FLSA Collective and FLSA Collective. The Collective Groups have been determined based upon the complete pay and time records for the period at issue. The total number of unique employees in the Putative FLSA Collective (inclusive of all Collective Groups) is approximately 17,000.

i. "Net-Under" means those Putative FLSA Collective and FLSA Collective members who were allegedly underpaid during the Kronos Outage. The total number of unique employees in this group is approximately 6,700.

ii. "Net-Over" means those Putative FLSA Collective and FLSA Collective members who were allegedly correctly paid or overpaid during the pay periods corresponding with the Kronos Outage. The total number of unique employees in this group is approximately 10,300.

**2. No Admission of Liability or Determination as to the Merits**. Releasees deny the allegations made in the Lawsuit and deny that they engaged in any wrongdoing or violation of law. Neither this Settlement Agreement, nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, may be used in any way as an admission, concession, or indication by or against Releasees of any fault, wrongdoing, or liability whatsoever.



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

## RELEASE

**3. Release**. In consideration for the benefits to be received by Plaintiff and the FLSA Collective members under this settlement as described in Section 7 in this Settlement Agreement:

a. Plaintiffs and the FLSA Collective members shall be deemed to have released and forever discharged Releasees from all claims, demands, rules or regulations, or any other causes of action of whatever nature, whether known or unknown, regarding only the following claims, arising during any pay period that included work days from December 5, 2021 through January 15, 2022, as a result of Tyson's Kronos Outage:

i. All claims for unpaid wages, including but not limited to regular wages, minimum wages, and overtime wages in accordance with state or federal law;

ii. All claims for liquidated and/or punitive damages under the FLSA and/or any other applicable state wage-and-hour law;

iii. All claims relating to the calculation or payment of wages, failure to timely pay wages, failure to record hours worked, paystub requirements, reimbursement, and all related claims for statutory damages or penalties arising under the FLSA and/or any other applicable state wage-and-hour law;

iv. All claims for conversion, breach of contract, quantum meruit, unjust enrichment, theft of labor, or other common law cause of action related to any alleged failure to pay for work performed or to be performed; and

v. All related claims for interest, costs, and attorneys' fees.

**4. Release Printed on Settlement Checks to Putative FLSA Collective Members.** The Parties agree to include mutually agreed upon release language in the form attached on Exhibit B on each settlement check tendered to Putative FLSA Collective members.

## SETTLEMENT IMPLEMENTATION

**5. Approval of Settlement.**

a. Within 21 calendar days of the execution of this Settlement Agreement, Plaintiff shall file a motion for approval of this settlement with the Court.

b. Tyson may join in the motion, but shall not oppose a motion made under this section unless any provision of the motion is inconsistent with this Settlement Agreement. Notwithstanding the foregoing, this provision shall not apply to Collective Counsel's Petition for Attorney's Fees and Costs as set forth in section 10(a) below.



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

c. The Parties agree that if the Court declines to approve this settlement, the Parties agree to meet and confer in good faith to resolve any issues identified by the Court. If the Parties cannot agree to resolve a dispute, they agree to take the dispute to the previous mediator, Dennis Clifford, Esq., to attempt to resolve such dispute.

**6. Stipulation for Certification**.

a. The Parties hereby stipulate, for settlement purposes only, to the following:

i. Certification of the of the Putative FLSA Collective, for settlement purposes only, as defined herein, pursuant to 29 U.S.C. § 216(b);

ii. Notification of the settlement to the Putative FLSA Collective, as defined herein, pursuant to 29 U.S.C. § 216(b), in the form, or substantially the form, of the notice attached hereto as **Exhibit A** (the "**Notice of Settlement**");[1]

iii. The designation of Plaintiff as the Named Plaintiff and Collective Representative; and

iv. The appointment of Plaintiff's Counsel as Collective Counsel.

b. If the settlement is not approved by the Court or the Effective Date described in Section 6 does not occur, Releasees' stipulations pursuant to this Section 5 shall be null and void, and may not be used or relied upon by anyone for any purpose whatsoever in this Lawsuit, or any other judicial, administrative, or arbitral proceeding. In that event, Releasees do not waive, and instead expressly reserve, their right to challenge the propriety of certification of any FLSA collective.

**7. Effective Date**. The settlement shall become effective when all the following events have occurred:

a. This Agreement has been executed by Plaintiff and Tyson; and

b. The Court has entered an Order approving the settlement and the Court's Order becomes final because the following has occurred: (a) the expiration of three business days after the time to file a motion to alter or amend the Final Approval Order under Federal Rule of Civil Procedure 59(e) has passed without such a motion having been filed (which date shall be deemed to be 31 days following entry of the Final Approval Order); (b) the expiration of three business days after the time in which to appeal the Order Approving Settlement has passed without any appeal having been filed (which date shall be deemed to be 33 days following entry of the Final Approval Order); and (c) if such motion to alter or amend is filed, or if an

[1] Plaintiff and Tyson recognize that the final Notice of Settlement Form may require modification for administrative reasons, typographical concerns, or grammatical fixes, as well as to address any non-material alterations suggested or required by the Court. The final Notice of Settlement Form will not be issued absent joint agreement to any changes.



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

appeal is taken, three business days after a determination of such motion or appeal that permits the consummation of the settlement; or

c. The Court declines to review the settlement (or the Parties elect not to seek Court approval) and the Court has entered an Order dismissing the Lawsuit.

## SETTLEMENT FUNDS AND AWARD CALCULATION

**8. Settlement Funds.**

a. **New Settlement Fund Amount**. The total and maximum settlement amount to be made available in the Qualified Settlement Fund is $2,050,000.00 (the "**New Settlement Fund Amount**").

b. **No Recoupment of Overpayments**. Tyson agrees it shall not attempt to recoup any overpayment amounts made to FLSA Collective members resulting from the Kronos Outage that have not yet been collected by Tyson. The approximate overpayment amount is $2,773,701.62.

c. **Gross Settlement Amount**. The gross settlement amount consists of the New Settlement Fund Amount together with the overpayment amount (§ 7(b)), for a total of approximately $4,823,701.62.

d. **Funding of Settlement**. Within 10 days of the Effective Date, Tyson shall cause to be deposited into an interest-bearing escrow account designated as a Qualified Settlement Fund pursuant to the Internal Revenue Code (the "**QSF**") designated by Plaintiff and under the control of the Settlement Administrator, the amount of $2,050,000.00.

e. **Settlement Awards**. Each of the Putative FLSA Collective members shall be mailed a Settlement Check consisting of his or her settlement award from the Collective Settlement Amount (each a "**Settlement Award**"). The formula for distribution of the Collective Settlement Amount is set forth on **Exhibit C** and shall be calculated by the Settlement Administrator.

**9. Process for Mailing the Notice of Settlement and Settlement Checks to Putative FLSA Collective Members.**

a. Within 10 calendar days after the Effective Date, Tyson shall provide the Settlement Administrator with a list, in Microsoft Excel or Comma Separated Value format, of the names, employee numbers, social security numbers, last known mailing addresses, and email addresses (where included in Tyson's employee records) of all Putative FLSA Collective members ("**Collective List**"), as well as the amount of the alleged overpayment or underpayment of each Putative FLSA Collective Member during the Kronos Outage, so that the Settlement Administrator can process and mail the Notice of Settlement and Settlement Awards to all Putative FLSA Collective members.



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

b. Within 14 days of the Settlement Administrator's receipt of the Collective List and funds in the QSF, the Settlement Administrator will, in the following order: (1) determine the amount of the Collective Settlement Amount (as defined in Section 1(h)) available for distribution to the Putative FLSA Collective members; (2) using the formulas set forth in Exhibit C, issue the Notices of Settlement and Settlement Awards to all Putative FLSA Collective members by USPS First Class U.S. Mail ("Notice Date") and (3) disburse to Plaintiff's Counsel 80% of the attorneys' fees and cost payment approved by the Court via wire, with instructions to be provided by Plaintiff's Counsel. The Settlement Administrator shall certify in writing to the Parties' counsel the date that such mailing has been made. The disbursement to Plaintiff's Counsel shall not be made prior to the mailing of checks to the Putative FLSA Collective members.

c. Prior to mailing, the Settlement Administrator will use all standard skip tracing devices or similar means to verify the accuracy of all physical addresses in the Collective List in order to ensure, to the extent reasonably practicable, that the Notice of Settlement and Claims Forms are sent to all Putative FLSA Collective members at the mailing addresses most likely to result in receipt of the Notice of Settlement and Settlement Award. This will include running the addresses through the National Change of Address database. With respect to returned envelopes, the Settlement Administrator will use reasonable diligence to obtain a current address and re-mail the envelope to such address within 10 days of the receipt of the returned envelope. Any Notices returned undeliverable during the Administration Period (defined below) shall be traced up to two times to obtain a new address and be re-mailed by First Class U.S. Mail.

d. Each Settlement Check shall be valid for 90 days after issuance. In the event that a Settlement Check is lost or damaged, the Putative FLSA Collective member may request, at any time within the 90-day period, that a replacement check be issued. Within 14 days of a request for reissuance, a check for the amount of the expired check shall be issued to the requesting Putative FLSA Collective member, which shall be valid for 90 days after issuance.

e. Any portion of the Collective Settlement Amount that is unclaimed by members of the FLSA Collective after the initial deadlines for the issuance of checks shall be redistributed pro rata to those FLSA Collective members (the "Redistribution Checks"), using the same process outlined in paragraph 9(b). Each Redistribution Check shall be valid for 60 days after issuance. In the event that a Redistribution Check is lost or damaged, the Putative FLSA Collective member may request, at any time within the 60-day period, that a replacement check be issued. Within 14 days of a request for reissuance, a check for the amount of the expired check shall be issued to the requesting Putative FLSA Collective member, which shall be valid for 90 days after issuance. Any portion of the Collective Settlement Amount that is unclaimed by members of the FLSA Collective after the second deadlines for the issuance of Redistribution Checks shall be remitted as cy pres to the National Employment Law Project, Legal Aid of Arkansas, the Center for Arkansas Legal



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

Services, and/or another beneficiary selected by Plaintiff, subject to the approval of Tyson, which approval shall not be unreasonably withheld.

f. All fees and costs incurred by the Settlement Administrator in administering this settlement, which shall include but not be limited to all fees and costs for: reproducing the Notice of Settlement; producing checks for FLSA Collective Members; postage to send the Notice of Settlement and settlement checks to FLSA Collective Members; notifying the Putative FLSA Collective members of the Lawsuit; performing skip tracing services; mailing appropriate tax forms to FLSA Collective Members; and other fees reasonably incurred by the Settlement Administrator and approved by the Parties (the "**Administration Costs**") shall be paid to the Settlement Administrator from the New Settlement Fund Amount.

g. The "**Administration Period**" is the period of time beginning on the date when the New Settlement Fund Amount is paid to the Settlement Administrator through the later of:

i. the date that all settlement checks have been cashed and/or deposited by FLSA Collective members; or

ii. where the time for requesting a replacement check has passed for all FLSA Collective members and any replacement check requested has been issued, the date on which all uncashed and/or deposited checks (including replacement checks) have expired, and any remaining amount redistributed to the cy pres recipient.

h. Within 14 days following the conclusion of the Administration Period ("Final Accounting Date"), the Settlement Administrator shall provide a full accounting to Collective Counsel and Tyson's Counsel ("Final Accounting") which will include the following:

i. The total Administration Costs;

ii. The total amount of the cashed and/or deposited settlement checks (the "**Claimed Collective Settlement Amount**");

iii. The names and completed consent forms for all FLSA Collective Members; and

iv. The total amount of the Collective Settlement Amount remaining in the QSF, which shall distributed to the cy pres recipient.

i. Within 14 days following the Final Accounting Date, Collective Counsel shall file with the Court a list of all names of the FLSA Collective Members. Plaintiff and Tyson agree that Collective Counsel's written representation that the individuals consented to join the Lawsuit shall satisfy all requirements for a written consent pursuant to 29 U.S.C. § 216(b). Notwithstanding the foregoing, if the Court requires the original consents to be filed with the Court, Collective Counsel shall



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

file copies of all Consent Forms received from FLSA Collective Members, with any personal contact information redacted.

i. Within 14 days following the Final Accounting Date, the Settlement Administrator shall disburse the remaining 20% of the attorneys' fees and cost payment approved by the Court via wire, with instructions to be provided by Plaintiff's Counsel. The Settlement Administrator shall certify in writing to the Parties' counsel the date that such mailing has been made.

**10. Treatment of Settlement Awards by Collective Groups**.

a. The entire amount of Settlement Award for each FLSA Collective Member will constitute liquidated damages in connection with the FLSA Collective members' claims under the FLSA and state law. No taxes or withholdings will be deducted by Tyson or the Settlement Administrator, and the FLSA Collective members will be solely responsible for paying all applicable taxes. The Settlement Administrator will issue to each FLSA Collective member here an IRS Form 1099.

b. Each FLSA Collective member will be responsible for the payment of any additional local, state, or federal taxes or withholdings resulting from or attributable to the payments received.

**11. Collective Counsel's Attorneys' Fees and Costs**.

a. Plaintiff and/or Collective Counsel may petition the Court for an award of attorneys' fees and expenses in conjunction with the Parties' settlement in an amount not to exceed 40% of the New Settlement Fund Amount, plus costs and expenses incurred in the representation.

b. The funds for the payment of approved attorneys' fees and expenses shall be paid as outlined in paragraph 8 above.

c. The attorneys' fees and costs paid by the FLSA Collective shall constitute full satisfaction of Releasees' obligations to pay amounts to any person, attorney, or law firm for attorneys' fees or costs in the Lawsuit, and shall relieve Releasees from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of FLSA Collective members.

d. An IRS Form 1099 shall be provided to Collective Counsel by the Settlement Administrator for the payment of attorneys' fees and expenses made to Collective Counsel through Releasees. Each firm constituting Collective Counsel shall be solely and legally responsible to pay applicable taxes on the payment made to that firm.

**12. Service Awards**. Plaintiff may seek approval of service awards not to exceed $5,000.00 for herself, $2,500.00 for Shanta Love, and $2,500.00 for Jeanous West. This award is in addition to each of their individual Settlement Awards, if any. Tyson agrees not to object to such



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

application. The Service Awards shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099 (box 3) and shall not be subject to FICA and FUTA withholding taxes. The Service Awards shall be paid from the New Settlement Fund Amount.

**13. No Claim Based Upon Distributions or Payments in Accordance With This Settlement Agreement**. No person shall have any claim against Plaintiff, any FLSA Collective member, Releasees, the Settlement Administrator, Collective Counsel, or Tyson's Counsel based on distributions or payments made in accordance with this Settlement Agreement.

## MISCELLANEOUS

**14. Tyson's Legal Fees**. Tyson's legal fees, costs, and expenses in the Lawsuit shall be borne by Tyson.

**15. Nullification of the Settlement Agreement**. In the event the settlement does not become final for any reason, this Settlement Agreement shall be null and void, and the Parties shall revert to their respective statuses as of the date immediately prior to the execution of this Settlement Agreement. If this occurs, the Parties shall proceed in all respects as if the Settlement Agreement had not been executed.

**16. Severability**. If for any reason any term or provision of this Settlement Agreement is held to be invalid or unenforceable to any extent, then (a) such term or provision will be interpreted, construed, or reformed to the extent reasonably required to render the same valid, enforceable, and consistent with the original intent underlying such provision; (b) such term or provision will remain in effect to the extent that it is not invalid or unenforceable; and (c) such invalidity or unenforceability will not affect any other term or provision of this Settlement Agreement; provided however, that the paragraphs included in Section 3 (Release, New Settlement Fund Amount, and Collective Settlement Amount) are material terms whose inclusion is essential to this Settlement Agreement. If any material term or provision is held to be invalid or unenforceable, or if is materially edited or reformed, then this Settlement Agreement may be voided at either Party's option. The Parties agree to cooperate to address and resolve any such issues as they arise, and to use reasonable, good-faith efforts to uphold the settlement reached by the Parties.

**17. Inadmissibility of Settlement Agreement**. Except for purposes of (a) settling the Lawsuit or (b) enforcing this Agreement, neither this Settlement Agreement, nor its terms, nor any document, statement, proceeding, or conduct related to this Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication, or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession, or damage.

**18. Computation of Time**. For purposes of this Settlement Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by Federal Rule of Civil Procedure 6(a)(6)), such time period shall be continued to the following business day.

**19. Amendment or Modification**. This Settlement Agreement may be amended or modified only by a written instrument signed by the Parties or their successors in interest or by duly



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

authorized counsel for such persons or entities. Any such amendment or modification will only become effective upon approval by the Court. Other than a deadline requiring court approval, any deadline in this Agreement may be extended by agreement of the Parties.

**20. Waiver**. No waiver of any breach of any term or provision of this Settlement Agreement shall be construed to be, nor shall be, a waiver of any other breach of this Settlement Agreement. No waiver shall be binding unless in writing and signed by the Parties waiving the breach or their successors in interest or by duly authorized counsel for such persons or entities.

**21. Entire Settlement Agreement**. This Settlement Agreement constitutes the entire agreement between the Parties, and no oral or written representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in this Settlement Agreement. All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect. Each of the Parties acknowledges that, in entering into this Settlement Agreement, they have not relied on any promise, representation, or warranty, express or implied, not contained in this Agreement.

**22. Binding on Successors and Assigns**. This Agreement shall be binding upon, and inure to the benefit of Plaintiff, the FLSA Collective, Releasees, and each of their heirs, beneficiaries, executors, administrators, successors, transferees, successors, or assigns.

**23. Assignment**. Neither this Settlement Agreement nor any rights or obligations hereunder may be assigned by one Party without the written consent of the others, except that Tyson may assign this Agreement to any subsidiary or affiliate entity, and this Agreement shall inure to the benefit of any successor of Tyson, whether by merger, consolidation, sale of assets or otherwise, and reference herein to Tyson shall be deemed to include any such successor or successors.

**24. Counterparts**. This Settlement Agreement may be executed in one or more counterparts, including by electronic signature, facsimile, or email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

**25. Cooperation and Drafting**. The Parties have cooperated in the drafting and preparation of this Settlement Agreement; hence the drafting of this Settlement Agreement shall not be construed against any of the Parties. The Parties agree that the terms and conditions of this Settlement Agreement were negotiated at arm's-length and in good faith by the Parties, and the terms and conditions reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

**26. Bona Fide Dispute**. The Parties agree this Settlement Agreement is a resolution of a bona fide dispute and related claims. Nothing in this Settlement Agreement constitutes an admission that Releasees violated any applicable law.

**27. Captions**. The captions or headings of the sections and paragraphs of this Settlement Agreement have been inserted for convenience of reference only and shall have no effect on the construction or interpretation of any part of this Settlement Agreement.



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

**28. Authority of Tyson's Signatories**. By executing this Settlement Agreement, Tyson represents and warrants that it is a business entity, existing and in good standing under the laws of its state of formation, and that the person executing this Settlement Agreement on its behalf is fully authorized to bind it. The person executing this Settlement Agreement on each Tyson's behalf likewise represents and warrants that they have been authorized to execute and enter into this Settlement Agreement on behalf of Tyson.

**29. Continuing Jurisdiction**. This Agreement is subject to the continuing jurisdiction of the Court to construe, interpret and enforce the provisions of this Agreement and to supervise the administration and distribution of the resulting settlement funds.

**30. Signature**. An electronic or facsimile signature shall be deemed to be an original for all purposes.

**31. Choice of Law and Venue of Disputes**. This Settlement Agreement shall be construed under Arkansas law, without regard to any choice of law principles, except to the extent any law of the United States governs any matter set forth, in which case federal law shall govern. Any dispute arising under this Settlement Agreement shall have venue exclusively in the United States Western District Court for the District of Arkansas.

**32. Acknowledgment.** Each Party executing this Settlement Agreement confirms they are doing so knowingly and voluntarily and that they have read this Settlement Agreement, have understood it, and have entered it after being advised by their respective attorneys, or with the complete opportunity to do so.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

[signature] Date: 10 / 23 / 2024

Annie Thornton
individually and on behalf of the FLSA Collective

____________________________ Date: ________________

On behalf of Tyson Foods, Inc.

Name

Title



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

**28. Authority of Tyson's Signatories**. By executing this Settlement Agreement, Tyson represents and warrants that it is a business entity, existing and in good standing under the laws of its state of formation, and that the person executing this Settlement Agreement on its behalf is fully authorized to bind it. The person executing this Settlement Agreement on each Tyson's behalf likewise represents and warrants that they have been authorized to execute and enter into this Settlement Agreement on behalf of Tyson.

**29. Continuing Jurisdiction**. This Agreement is subject to the continuing jurisdiction of the Court to construe, interpret and enforce the provisions of this Agreement and to supervise the administration and distribution of the resulting settlement funds.

**30. Signature**. An electronic or facsimile signature shall be deemed to be an original for all purposes.

**31. Choice of Law and Venue of Disputes**. This Settlement Agreement shall be construed under Arkansas law, without regard to any choice of law principles, except to the extent any law of the United States governs any matter set forth, in which case federal law shall govern. Any dispute arising under this Settlement Agreement shall have venue exclusively in the United States Western District Court for the District of Arkansas.

**32. Acknowledgment.** Each Party executing this Settlement Agreement confirms they are doing so knowingly and voluntarily and that they have read this Settlement Agreement, have understood it, and have entered it after being advised by their respective attorneys, or with the complete opportunity to do so.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

________________________________ Date: ________________
Annie Thornton
individually and on behalf of the FLSA Collective

Bradley Wallace (Oct 17, 2024 09:30 CDT) Date: 10/17/2024
On behalf of Tyson Foods, Inc.

Bradley Wallace
Name

Chief Counsel
Title

Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

**EXHIBIT A**

**NOTICE OF SETTLEMENT**

(Attached)



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

# EXHIBIT B

## SETTLEMENT CHECK LANGUAGE

**Attention:** By cashing, depositing, transferring, or otherwise negotiating the enclosed check you are agreeing to a full and complete release of any and all wage-and-hour claims, including under the Fair Labor Standards Act and any state/local law, related to the Kronos Outage from December 11, 2021, through January 15, 2022 that you may have against Tyson Foods, Inc., and its predecessors, successors, affiliates, and divisions, as well as each of their and each of Tyson's agents; managers; owners; employees; members; officers; directors; partners; investors; legal representatives; accountants; trustees; executors; administrators; real or alleged alter egos; predecessors; successors; transferees; assigns; attorneys; and insurers. The wage-and-hour claims you are releasing include all known or unknown claims for any wage-and-hour violations, including but not limited to, claims related to minimum wage, overtime, wage rate, timing of payment, timekeeping, paystubs and/or wage statements, or time worked related to the Kronos Outage and including all related claims for penalties, interest, and attorneys' fees. The wage-and-hour claims you are releasing specifically include claims that you raised or could have raised as an opt-in plaintiff in the lawsuit: *Thornton v. Tyson Foods, Inc.*, No. 5:22-cv-05077-TLB (D. Ark.).



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

# EXHIBIT C

## FORMULA FOR DISTRIBUTION OF SETTLEMENT

- For the Collective Groups, the Collective Settlement Amount, as defined in Paragraph 1 of the Settlement Agreement, shall be allocated as follows, following the deduction of court-approved attorneys' fees and costs, the Service Award Payments, and administrative fees and costs (including those of the Settlement Administrator) from the New Settlement Fund Amount:

    1. For the "Net-Over" group: an estimated amount of $309,000, with each individual allocated $30.

    2. For the "Net-Under" group: all funds in the Collective Settlement Amount less the payments to the "Net-Over" group described above, to be allocated on a pro-rata share of their underpaid amount as compared to the total amount of the "Net-Under" Putative FLSA Collective members' aggregate underpayment amount. The actual amounts distributed will be determined by the portion of the Collective Settlement Amount allocated to the "Net Under" group as described herein. For example, if a Putative FLSA Collective member's personal underpayment amount was 0.1% of the total "Net-Under" Putative FLSA Collective members' aggregate underpayment amount, then that claimant shall receive 0.1% of the portion of the Collective Settlement Amount allocated to the "Net-Under" group, as described herein. However, "Net-Under" Putative FLSA Collective members shall each receive a minimum of $40.00 from the net settlement amount if their pro-rata share results in a potential payment of less than $40.00. This may require the Settlement Administrator to recalculate the pro rata shares. In no way will this result in an increase of the New Settlement Fund Amount.

**NOTICE OF SETTLEMENT OF WAGE CLAIMS FOR EMPLOYEES OF TYSON**

**TIME-SENSITIVE, COURT-AUTHORIZED NOTICE**
*** * * This is not an advertisement from a lawyer. * * ***

**This Notice explains your legal rights and options regarding a settlement with Tyson Foods, Inc. for employee wage claims regarding the Kronos outage beginning in December 2021**

## 1. What is this about?

A lawsuit was filed against Tyson Foods, Inc. for unpaid overtime under a federal law, the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and related state laws.

The lawsuit involves employees who worked at Tyson Foods, Inc. facilities that were operated by Advance Food Company LLC, AdvancePierre Foods, Inc., Allied Specialty Foods, Inc., Barber Foods, LLC, Cloverdale Farms, LLC, Cobb-Heritage, LLC, Keystone Foods, LLC, Original Philly Holdings, Inc., or The Hillshire Brands Company, and whose pay was affected by the Kronos system outage, which affected time keeping and pay between December 11, 2021, and January 15, 2022. Throughout this Notice, for simplicity, Tyson Foods, Inc., and its subsidiaries are referred to as "Tyson."

The lawsuit was filed by an employee of Tyson who believes she and other employees were not paid on time after a payroll outage of Tyson's Kronos timekeeping and payroll system. The lawsuit claims that Tyson did not timely or accurately pay employees working at the Tyson facilities listed above for all hours worked between December 11, 2021, and January 15, 2022, due to the Kronos outage. The case is *Thornton v. Tyson Foods, Inc.*, Case No. 5:22-cv-05077-TLB, in the Fayetteville Division of the United States District Court for the Western District of Arkansas. The Court has not determined that Tyson is liable or did anything wrong. Instead, the employees and Tyson reached a settlement to resolve the case. The Court overseeing the lawsuit has approved that settlement, which pays money to all non-exempt employees who worked for Tyson at the facilities listed above during the Kronos outage that join the settlement.

In order to recover money, you must join the settlement. If you do not join the settlement, you will not receive any money.

## 2. Why am I getting this notice?

You have been identified from Tyson's records as an employee who worked for affected facilities during the Kronos outage and who is eligible to recover money from the settlement. In order to recover money, you must join the settlement. If you do not join the settlement, you will not receive any money.

## 3. What is my share of the settlement?

Some of Tyson's employees affected by the Kronos outage were underpaid during the outage. Others were overpaid. Some of the underpaid employees were only underpaid a small amount. Your settlement payment is based on your hours worked with Tyson and the amount you were paid during the Kronos outage. Based on this reconciliation each employee, including you, was classified as an underpaid or overpaid employee.

If you were **underpaid**, you are receiving one check representing "liquidated damages," which is a proportional amount of your delayed wages, based on the amount in the settlement fund. This payment will be a minimum of $40.00.

If you were **overpaid**, you are receiving one check representing "liquidated damages" in the amount of $30.00. This payment is being made to resolve any potential claims you might have. You will also get to keep any overpayment of wages that was made to you and not yet recouped.

## 4. How do I get the money offered?

| | |
|---|---|
| **To join the settlement:**<br><br>**CASH THE CHECK** | If you choose to be included in the settlement, all you need to do is deposit or cash the enclosed check. |
| **To stay out of the settlement:**<br><br>**DO NOTHING** | If you do not want a payment or other benefits from this settlement and you want to release Tyson from any of the wage claims that were settled in this lawsuit, then **do not** deposit or cash the enclosed check. By doing nothing, you give up the possibility of getting money from the settlement of this lawsuit. If you were overpaid, you may also be required to pay Tyson for any overpayment made to you that has not already been repaid. |

## 5. What happens if I complete the claim form?

If you deposit or cash the enclosed check, you agree to the following:

> You will be acknowledging that you are represented by PARMET PC and MORGAN & MORGAN, P.A. (together, the "Collective Attorneys") and that you will be bound by the terms of the attorney-client agreement signed by Annie Thornton. You will **not** have to pay the Collective Attorneys any money directly. Attorneys' fees and costs will be paid as part of the as a percentage of the overall settlement recovery funded by Tyson.
>
> You will be waiving and releasing all claims against Tyson and its related companies (listed above) for unpaid wages, including overtime and penalties, related to the Kronos outage, for days worked between December 11, 2021, and January 15, 2022.
>
> If you were overpaid, you will not be required to repay Tyson for any overpayment that they made to you during the Kronos outage that has not yet been repaid.

## 6. What does the Court think?

While the Court approved this settlement, the Court did not determine that Tyson (or anyone else) did anything wrong. The Court did not determine you are owed any money. Instead, this is a settlement payment.

**Do not contact the Court regarding this settlement. The Court must remain neutral in this matter and cannot give you advice.**



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

## 7. What does Tyson think?

Tyson denies it did anything wrong and believes you were paid correctly and fairly for your work. Tyson also does not think a collective action (group lawsuit) is appropriate. Tyson believes this settlement is a fair solution to this lawsuit and encourages all employees to join in this settlement. No adverse employment action will be taken against you whether or not you join this settlement and cash or deposit your settlement checks.

## 8. How long do I have to make a decision?

**You can deposit or cash the enclosed check within 90 days of the date it was issued. If you lose or damage the check during that 90-day period, you can contact the Settlement Administrator to request that a replacement check be issued. Any reissued replacement check will be valid for 90 days after issuance.**

## 9. I still have questions. Where can I get more information?

This Notice is only a summary. If you would like, you can obtain certain documents related to the case. However, the deadline for cashing your check will not be extended.

If you have any questions about the settlement, the status of your Claim Form, or your payment, you may contact the Settlement Administrator:

ADMIN NAME AND ADDRESS

If you have any questions about the collective action or your legal rights, you may contact the attorneys for the group of Tyson employees:

Matthew S. Parmet
PARMET PC
2 Greenway Plaza, Ste. 250 | Houston, TX 77046
phone 713 999 5200
team@parmet.law

Andrew R. Frisch
MORGAN & MORGAN
8151 Peters Road, 4th Floor | Plantation, FL 33324
phone 954-327-5355 | fax 954-327-3013
AFrisch@forthepeople.com



Doc ID: 452b83e18ff71d6567b0071c8e1bd5362b5c48f8

Dropbox Sign

Audit trail

| | |
|---|---|
| **Title** | Revised Settlement Agreement |
| **File name** | 0_Am_Settlement_Agmt.pdf and 1 other |
| **Document ID** | 452b83e18ff71d6567b0071c8e1bd5362b5c48f8 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| SENT | **10 / 15 / 2024**<br>21:44:25 UTC-5 | Sent for signature to Annie Thornton (anniethornton478@gmail.com) from matt@parmet.law<br>IP: 73.115.202.190 |
| VIEWED | **10 / 23 / 2024**<br>12:17:22 UTC-5 | Viewed by Annie Thornton (anniethornton478@gmail.com)<br>IP: 174.218.56.61 |
| SIGNED | **10 / 23 / 2024**<br>12:20:15 UTC-5 | Signed by Annie Thornton (anniethornton478@gmail.com)<br>IP: 174.218.56.61 |
| COMPLETED | **10 / 23 / 2024**<br>12:20:15 UTC-5 | The document has been completed. |