**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | |
|---|---|
| ANNIE THORNTON, individually and on behalf of all others similarly situated,<br><br>v.<br><br>TYSON FOODS, INC. | **Case No. 5:22-cv-05077-TLB**<br>FLSA Collective Action<br><br>Judge Timothy L. Brooks |

**DECLARATION OF MATTHEW S. PARMET**

I, Matthew S. Parmet, am over 18 years of age, of sound mind, and fully competent to make this declaration. I have personal knowledge of the facts herein. I testify as follows:

## A. BACKGROUND & EXPERIENCE

1. I am an attorney for Plaintiffs in the above-referenced matter.

2. I am licensed to practice law in Texas, Arizona, California, Colorado, Louisiana, and Pennsylvania. My license is currently active and in good standing in all these states.

3. In addition, I am admitted to practice law before the United States Supreme Court, the United States Courts of Appeals for the Fifth, Ninth, and Tenth Circuits, and numerous United States District Courts.[1]

4. I have practiced law with PARMET PC since May 2018. Prior to that time, I practiced law with BRUCKNER BURCH PLLC beginning in September 2015, with SICO WHITE HOELSCHER HARRIS & BRAUGH LLP beginning in March 2013, and with DOYLE RAIZNER LLP beginning in October 2010. In each of these positions, my practice primarily focused on various aspects of litigation on behalf of plaintiffs, including high-value, complex litigation.

5. I am involved in several professional legal organizations. I have served on the Board of Directors for the Houston Trial Lawyers Association since 2011, and I previously served on the Board of Directors for the Seventh Amendment Political Action Committee. I am a member of several other organizations, including the National Employment Lawyers Association, the Texas Employment Lawyers Association, and the Mexican American Bar Association of Houston, and in the past, I have been a member of several other organizations, including the Attorneys Information Exchange Group, the Texas Trial Lawyers Association, the Houston Bar Association, the Houston Young Lawyers Association, and the California Employment Lawyers

[1] District Courts are identified on Exhibit 1.

Ex. C

Association. In addition, I have prepared a number of continuing legal education papers for presentation at various engagements.

6. I have been listed as a "Rising Star Super Lawyer" by the Texas Monthly and Texas Lawyer magazines for 2018, 2019, 2020, 2021, 2022, 2023, and 2024.

7. Attached to this declaration are a true and correct copy of my current resume (Exhibit 1), which contains additional information about my knowledge, skill, experience, training, and education.

8. I am familiar with the standards of practice required by, and regularly practiced in, federal courts, including those in Arkansas and the Eighth Circuit. The opinions in this declaration are based on my knowledge, training, skills, and experience, as well as the applicable law, and an analysis of relevant issues as outlined in this declaration.

9. Successful handling of cases such as this requires particularized expertise and experience, qualities possessed by Plaintiffs' counsel.

10. My Firm and I have litigated hundreds of wage-and-hour cases as lead or co-counsel and maintain a particular focus on wage-and-hour litigation on behalf of employees.

11. My Firm and I have litigated wage-and-hour cases nationwide in at least 39 states, including Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Mexico, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, Wisconsin, and Wyoming.

12. My Firm and I have reviewed and become familiar with a large body of documents and information concerning wage-and-hour litigation, which benefits cases such as this and maximizes the settlement value of the case. Our experience in this field has also resulted in a familiarity with the evidence and testimony necessary to the successful prosecution of cases such as this. In all, my Firm and I have secured settlements in wage-and-hour cases on behalf of many clients.

## B. FLSA LITIGATION REGARDING KRONOS OUTAGE

13. Plaintiffs retained Plaintiffs' counsel to assist in recovery for claims for unpaid wages and related damages against their employer, Tyson.

14. The suit claimed that Tyson delayed or failed to pay wages, including overtime wages, to themselves and other non-exempt employees of Tyson after a time and payroll system outage beginning on or about December 11, 2021.

15. That time and payroll outage was the result of an alleged cyberattack on the cloud-based Kronos system, operated and maintained by the Ultimate Kronos Group, Inc. (UKG).

16. As a result of the alleged cyberattack on the Kronos system, Tyson's time and payroll systems became inaccessible to Tyson for an extended period of time (the "Kronos Outage").

17. The Kronos Outage resulted in the delayed or non-payment of wages, including overtime, to non-exempt Tyson employees.

18. Plaintiffs claimed that, under the FLSA and applicable state law, they were owed any overtime wages that had not been paid during the Kronos Outage, as well as her regular pay for any hours worked during a week in which they also worked overtime.

19. Plaintiffs claimed they were also owed liquidated damages, attorney fees, and costs, as provided for under the FLSA and applicable state law.

20. Plaintiffs also alleged that other, similarly situated employees were subject to the same pay practice as a result of the Kronos Outage, and that their claim should be certified as a collective action under the FLSA, as well as a class action under applicable state laws.

21. Tyson has denied, and continues to deny, any wrongdoing regarding their time and pay practices during and after the Kronos Outage, including the method and timeliness of calculating and paying wages.

22. My Firm, and the Morgan & Morgan team working on this matter, maintain a particular focus on class and collective action wage-and-hour cases like this one.

23. Besides a focus on wage-and-hour litigation in general, our Firms has filed suit against over 50 different employers across the country regarding the Kronos outage—which involve the same or similar allegations as this case.

24. To my knowledge, our Firms has filed more cases stemming from the Kronos outage at issue than any other attorneys.

25. Several of these matters, like this one, have already resolved.

26. In the course of litigating these Kronos Outage-related cases, our Firms have reviewed and become familiar with a large body of documents and information concerning the subject matter of this litigation, which benefits cases such as this and maximizes their values.

27. The information and experience acquired by Plaintiffs' counsel includes information regarding the Kronos outage, the Kronos system, employers' interactions with UKG during and after the outage, and the valuation and structures of settlements in related litigation.

28. Our Firms' knowledge and experience in this general field of law, and the Kronos Outage wage-and-hour litigation in particular, has also resulted in a familiarity with the evidence necessary to the successful prosecution of cases such as this.

## C. Plaintiffs' Agreement with Counsel

29. Plaintiffs were unable to pay Plaintiffs' counsel on an hourly basis and to pay in advance the costs of litigation, which were certain to be very significant in a wage-and-hour individual or collective/class action. Plaintiffs' counsel therefore agreed to handle the matter on a contingency basis.

30. Plaintiffs and Plaintiffs' counsel agreed that Plaintiffs would pay a maximum of 40% of contingent fee of any monies, interest, or property recovered—unless Plaintiffs' counsel was able to recover a greater amount in fees awarded by a court or negotiated with Defendant. The agreement further called for Plaintiffs' counsel to advance all costs necessary to investigate, evaluate, and pursue the claims, which costs were to be reimbursed to Plaintiffs' counsel out of Plaintiffs' share of settlement money.

31. Plaintiffs and Plaintiffs' counsel also agreed that Plaintiffs would owe no attorneys' fees in the event that no recovery was made.

32. In all, Plaintiffs' counsel, working on contingency, had a large risk of loss for the time and efforts spent working on this matter.

## D. Underlying Litigation

33. This case was settled after substantial investigation and work by Plaintiffs and Plaintiffs' counsel.

34. Among the issues that the Parties disputed included: whether Tyson still owed any wages to Plaintiffs and similarly situated employees; whether the alleged FLSA violations were made in good faith and on reasonable grounds; and the propriety of proceeding as a collective under the FLSA.

35. The work undertaken by Plaintiffs and Plaintiffs' counsel included:

- Investigation of Tyson and its management and structure;
- Interviewing Plaintiffs;
- Review of Department of Labor database and records;
- Review of court records for similar or related cases involving Tyson and its related corporate entities;
- Review of legal authority, including court orders and administrative guidance, regarding legal issues before and during the course of the lawsuit;
- Drafting, filing, and serving Plaintiff's complaint;
- Drafting and sending Plaintiffs' disclosures;

- Reviewing Plaintiffs and opt-in Plaintiffs' documents and production;
- Drafting and serving written discovery on Tyson;
- Reviewing Tyson's written discovery responses;
- Reviewing Tyson's production, including payroll and time documents and data;
- Analyzing and processing data for Plaintiffs and the potential collective's payroll, including creating a damage model for the data;
- Drafting and filing documents with the Court, including Plaintiffs' motion for conditional certification;
- Attending two full-day mediations;
- Negotiating and finalizing the Parties' initial Settlement Agreement and approval documents; and
- Negotiating and finalizing the Parties' Amended Settlement Agreement and approval documents.

36. In addition, this case was mediated with Dennis Clifford during two full-day mediations on January 9, 2023, and October 23, 2023.

37. Mr. Clifford is a highly sought-after and successful employment class/collective action mediator.

38. After the conclusion of the second mediation, Mr. Clifford made a mediator proposal, which the Parties ultimately accepted.

39. Although the Parties reached a preliminary settlement, the Parties still negotiated over the following several months to finalize all the terms and reduce their agreement to a final settlement.

40. In all, this case was resolved through the extensive efforts of Plaintiffs' counsel and the expenditure of a great deal of time and energy.

## E. SUCCESSFUL RESOLUTION OF THIS CASE

41. The Parties to this matter reached a settlement agreement after extended, arm's-length negotiations.

42. In reaching the settlement and distribution of funds, I have not participated in any fraud or collusion. Nor am I aware of, nor do I believe there was, any fraud or collusion on the part of anyone in securing the settlement and distribution of funds.

43. I request that this court approve the attorneys' fees in the amount of 17% of the common fund, which is equal to 40% of the new settlement funds to be distributed to the collective.

44. Plaintiffs' attorneys' fees in this case are in line with Eighth Circuit precedent.

45. In my experience and to the best of my knowledge, firms operating on a contingency basis in similar cases most often seek attorney fees ranging from 1/3 to 40% of the gross settlement amount, or even 45%, and sometimes as much as 50% if a final judgment has been entered. Very seldom do firms operating on a contingency basis in similar cases accept such cases with attorneys' fees lower than 40% once a matter has entered litigation.

46. Further, based upon my knowledge and experience, most law firms today take the majority of, or all, contingency-based cases with an attorney fee agreement of 40% of the gross settlement amount once a matter has entered litigation (and, in particular, those law firms operating in the Arkansas legal market).

47. Here, Plaintiffs' counsel has agreed to take fees as a percentage of the new cash settlement fund **only**, rather than the potential value of the entire gross settlement amount, which represents the actual value of the benefit that achieved for the collective.

48. Thus, the requested fee of 17% of the gross settlement amount (40% of the new settlement funds) is fundamentally reasonable and customary, as Plaintiffs' counsel has worked extremely hard on the case, devoted a large amount of time to the case, risked significant capital, and achieved an excellent and expeditious result in a difficult and risky case.

49. Like any other wage-and-hour case, because of its complexity, it is assumed that the resources necessary to prosecute such a case may preclude employment on other cases.

50. Plaintiffs' counsel, working on contingency, had 100% of the risk of loss, advanced considerable costs, which had Plaintiffs not recovered anything from Tyson, would have been lost, and Plaintiffs' counsel would have carried various advanced costs, as well as unrecoverable time spent.

51. Although my Firm primarily takes on contingency-based work, we have also performed hourly work for select clients. When performing hourly work, my law firm generally seeks at least $450 per hour for my time. Several clients have been billed by my law firm at this rate.

52. Sammy Homsi is an attorney that worked for Parmet PC between May 2023 and June 2024. Mr. Homsi has been practicing law since November 2022.

53. My law firm has billed for Mr. Homsi's work on an hourly basis on one occasion, which was at the rate of $200 per hour.

54. My Firm maintains records of time, date, and work performed in FLSA matters such as this.

55. Based upon my review of the time records, as well as my Firm's file in this matter, the time spent by Plaintiffs' counsel to date far in this matter is at least 233 hours, including 178 hours spent by myself, and 55 hours by Mr. Homsi.

56. This time spent by my Firm does not include time spent by other staff members at my Firm. In particular, it excludes time spent by paralegals and legal assistants that have worked on this file.

57. In addition to time spent by my Firm and Morgan & Morgan, time was also spent on this matter by other firms that have not appeared as counsel of record, including by attorneys. This work was performed before and during the course of this litigation. This time was also not included within the time submitted by my Firm or Morgan & Morgan.

58. Based on past experience, I estimate Plaintiffs' counsel's duties fulfilling Plaintiffs' obligations under the settlement agreement, administering the settlement, and responding to Plaintiffs' and putative collective members' inquiries will take Plaintiffs' counsel at least another 50 hours of work.

59. Given all these facts and factors, the skills required to present the case, the time and costs expended to achieve the results, the reputation of counsel in the community, and the results achieved on behalf of the clients, the fees and litigation expenses requested for Plaintiffs' settlement as shown are reasonable and necessary, and is less than the amount agreed upon at the outset in writing by contract between Plaintiffs and Plaintiffs' counsel.

60. Plaintiffs' counsel also requests reimbursement of reasonable and necessary expenses, as follows:[2]

| Cost | Amount |
|---|---|
| Court Fees | $ 402.00 |
| Service | $ 95.00 |
| Copies | $ - |
| Postage | $ 52.20 |
| Mediation | $ 6,000.00 |
| Admission/PHV Fees | $ 200.00 |
| Travel and Incidental | $ - |
| Legal Research | $ 1,127.83 |

[2] This includes the expenses incurred by both my Firm and Morgan & Morgan.

| Cost | Amount |
|---|---|
| Certificates of Good Standing | $ 20.00 |
| Reserve | $ 2,000.00 |
| **TOTAL** | **$ 7,897.03** |

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 24, 2024.

***/s/ Matthew S. Parmet***

Matthew S. Parmet

PARMET PC

MATTHEW S. PARMET
Attorney at Law
Licensed in TX, PA, LA, CO, CA, and AZ
matt@parmet.law

# CURRICULUM VITAE OF MATTHEW SCOTT PARMET

## LICENSES & ADMISSIONS:

State Bars and Supreme Courts

| | | |
|---|---|---|
| Texas, 2009 | California, 2014 | Pennsylvania, 2022 |
| Louisiana, 2010 | Colorado, 2019 | Arizona, 2022 |

Supreme Court of the United States
United States Courts of Appeals for the Fifth, Ninth, and Tenth Circuits
United States District Courts

| | | |
|---|---|---|
| D. Arizona | E.D. Louisiana | M.D. Pennsylvania |
| E.D. Arkansas | M.D. Louisiana | W. D. Pennsylvania |
| W.D. Arkansas | W.D. Louisiana | E.D. Tennessee |
| C.D. California | D. Maryland | M.D. Tennessee |
| E.D. California | E.D. Michigan | W.D. Tennessee |
| N.D. California | W.D. Michigan | E.D. Texas |
| S.D. California | E.D. Missouri | N.D. Texas |
| D. Colorado | D. Nebraska | S.D. Texas |
| Dist. of Columbia | D. New Mexico | W.D. Texas |
| C.D. Illinois | D. North Dakota | E.D. Wisconsin |
| N.D. Illinois | N.D. Ohio | W.D. Wisconsin |
| N.D. Indiana | W.D. Oklahoma | |
| S.D. Indiana | E.D. Pennsylvania | |

## LEGAL EXPERIENCE:

**PARMET PC** — Houston, TX
Attorney — May 2018 – Present

- Representing plaintiffs in wage-and-hour class and collective actions throughout U.S., as well as select personal injury plaintiffs and commercial litigants.

**BRUCKNER BURCH PLLC** — Houston, TX
Associate Attorney — September 2015 – May 2018

- Represented plaintiffs in wage-and-hour class and collective actions throughout U.S.

**SICO WHITE HOELSCHER HARRIS & BRAUGH LLP** — Houston, TX
Associate Attorney — March 2013 – September 2015

- Represented plaintiffs in high-value, complex catastrophic injury and death cases, with emphasis on products liability, automotive and tire defects, commercial vehicle collisions, third-party claims arising from workplace injuries, and general negligence.

**DOYLE RAIZNER LLP** — Houston, TX
Associate Attorney — October 2010 – February 2013

- Represented plaintiffs in personal injury, Jones Act/maritime injury, insurance bad faith, Texas Deceptive Trade Practices Act, commercial vehicle collisions, products liability, toxic torts, and commercial litigation.



Ex. 1

**EDUCATION:**

**TULANE UNIVERSITY LAW SCHOOL** New Orleans, LA
Juris Doctor May 2009
Honors: *Tulane Environmental Law Journal*—Senior Managing Editor, Volume 22

**COLLEGE OF LIBERAL ARTS, UNIVERSITY OF TEXAS** Austin, TX
Bachelor of Arts in Psychology and Spanish with Honors December 2005
Honors: *Phi Beta Kappa* Society
*Psi Chi*, National Honors Society in Psychology
Liberal Arts Honors Program
Activities: *Sigma Alpha Mu* Fraternity

**AWARDS & RECOGNITION:**

Texas Monthly / Texas Lawyer Magazines
Rising Star Super Lawyer, 2018, 2019, 2020, 2021, 2022, 2023, 2024

**CERTIFICATIONS:**

Guardian/Attorney ad Litem, State Bar of Texas, 2020-22

**PROFESSIONAL ORGANIZATIONS:**

Houston Trial Lawyers Association
Board of Directors, 2011 – present
Mexican American Bar Association
National Employment Law Project
National Employment Lawyers Association
Texas Employment Lawyers Association
California Employment Lawyers Association

**PUBLICATIONS:**

Comment, *Mitigation Models Inch Toward a Full Review: Even When Effective, the Fish and Wildlife Coordination Act Remains Overshadowed by NEPA*, 21 TUL. ENVTL. L.J. 449 (2008)

Recent Development, *Lemon v. Geren*, 22 TUL. ENVTL. L.J. 475 (2009)