**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | |
|---|---|
| ANNIE THORNTON, individually and on behalf of all others similarly situated,<br><br>v.<br><br>TYSON FOODS, INC. | **Case No. 5:22-cv-05077-TLB**<br>FLSA Collective Action<br><br>Judge Timothy L. Brooks |

**DECLARATION OF ANNIE THORNTON**

I, Annie Thornton, am over 18 years of age, of sound mind, and fully competent to make this declaration. I have personal knowledge of the facts herein. I declare as follows:

1. I am the named plaintiff in the above-referenced matter.

2. During the relevant time I worked for Tyson, Tyson used a time and pay system through Kronos.

3. I would use Tyson's Kronos time system to clock in and out each day.

4. On or about December 11, 2021, the Kronos system had an outage, which I understand was caused by a ransomware hack of the company that runs Kronos, the Ultimate Kronos Group, Inc.

5. My understanding, based on my employment with Tyson, including information they provided to me and other employees, as well as news coverage and from discovery in this case, was that the Kronos outage caused a temporary loss of time and pay data, and temporarily denied Tyson access the Kronos system.

6. As a result of Tyson's Kronos outage, other Tyson employees and I were not timely paid all of our wages earned on the normal payday when our wages should have been paid.

7. I brought this lawsuit in order to recover wages that I believe were owed to me by Tyson as a result of underpayments and delayed payments after Tyson's Kronos outage began.

8. During the time that this lawsuit has been ongoing and throughout the mediation and settlement process, I have been aware of the work that my attorneys have been doing, as well as the general legal issues in this case and in the settlement.

Ex. F

9. I have discussed the lawsuit and settlement on a number of occasions with my attorneys, in order to assist them with successfully bringing these claims for me and the other Tyson workers.

10. During the course of these conversations, my attorneys have explained the case, the legal issues in the case, the expenses and costs that their law firm (and MORGAN & MORGAN, P.A.) spent, and the results that they were able to obtain for myself, the other Plaintiffs, and the other Tyson workers in the settlement.

11. I have also previously signed the Amended Settlement Agreement in this matter after having a chance to fully review it and ask questions about it.

12. I have been able to ask my attorneys questions about the case, and each time, I received an explanation that satisfied my concerns and answered by questions.

13. I understand that the settlement is final and cannot be reopened (as to myself and the other Plaintiffs). I also understand that I (and they) could have a trial in this matter and could be awarded more than the settlement; the same as the settlement, or less than the settlement. I also understand that by accepting this settlement, I can never recover any additional money with respect to the wage-and-hour allegations made in my Complaint.

14. My attorneys have discussed with me the amounts recovered for myself and the rest of the Plaintiffs in relation to our potential backwages, particularly in light of Tyson's defenses and the FLSA. Based upon this information, I believe that our attorneys achieved a successful outcome for all of us.

15. In particular, I understand that the settlement in this case will result in a recovery for myself and the other Tyson workers of about 62% of our potential FLSA liquidated damages after the payment of attorneys' fees, expenses, service awards, and administration costs.

16. This recovery is in addition to the fact that me and the other Tyson workers were paid our full backwages based on the delayed payments caused by the Kronos outage, after I filed my lawsuit.

17. I believe these payments were made or expedited because of, and in direct response to, my filing the lawsuit.

18. Even though the repayment of the unpaid wages only happened after the lawsuit was filed, the attorneys took no fees for these backwages.

19. In addition to the backwages and liquidated damages, Tyson is also agreeing that it will not make the Tyson employees who join the lawsuit pay back any overpayments that it made to them during the outage. This means that Tyson will forgive up to over $4.8 million in overpayments it made during the outage.



Doc ID: 03b9c3ce0292e44c510e1ec3094f722f4a5f63a5

20. This is very important because these employees may not even have this money, and it may be a real hardship for them if Tyson decided to try to get that money back from their wages or from another lawsuit against them.

21. For this reason, the forgiveness of these overpayments is a real value that the attorneys got for the Tyson workers that I wasn't even expecting when we brought the lawsuit, because I wasn't overpaid and wasn't thinking about it.

22. In all, between the payment of the liquidated damages and the forgiveness of overpayments, I believe this case had an exceptional result for me and the other Tyson workers.

23. For these reasons, I am very happy with the work that the attorneys did for me and the other Tyson workers. I believe they did a great job.

24. I am also fully aware that my attorneys have a 40% contingency fee arrangement to receive money out of the settlement amount. This fee arrangement part of the agreement that was made when I hired my attorneys.

25. That agreement says that my attorneys can take that 40% of anything of value my lawyers get.

26. In this case, the lawyers said they would not take the 40% of the full value, including the overpayments, and would instead take their percentage only from the additional cash fund that is created by the settlement.

27. This means that, if the $4.8 million forgiveness is included for a full value, the amount they would take is only 17% of the total settlement value for me and the other Tyson workers.

28. I am aware of the work that my attorneys have done in this lawsuit since it was filed and even beforehand, and I believe that this amount (40% of the net cash and 17% of the settlement) is fair and reasonable under the circumstances of this case.

29. It has further been explained to me, and as part of the Amended Settlement Agreement (and the attorney-client agreement with the attorneys), that the expenses in this matter ($7,897.03, plus the cost of settlement administration) will be deducted from the net cash fund in this matter. I believe these expenses were reasonable and necessary, and I approve of this division and payment of the expenses.

30. In reaching the settlement and distribution of funds, I have not participated in any fraud or collusion. Nor am I aware of, nor do I believe there was, any fraud or collusion on the part of anyone in securing the settlement and distribution of funds.



Doc ID: 03b9c3ce0292e44c510e1ec3094f722f4a5f63a5

31. After considering all the information set forth in this Declaration, the advice of my attorneys, and the fact that I am aware of the uncertainty of litigation and the risks regarding this lawsuit, and I believe that this settlement is in the best interest of myself, the other Plaintiffs, and the Tyson workers who will be eligible to join this settlement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 10 / 24 / 2024.

Annie Thornton



Doc ID: 03b9c3ce0292e44c510e1ec3094f722f4a5f63a5